THE PEOPLE *ex rel.* City of Chicago, Appellant, *vs.* THE ILLINOIS CENTRAL RAILROAD COMPANY, Appellee.

*Opinion filed June 18, 1908—Rehearing denied October 7, 1908.*

1. RAILROADS—*section 8 of Railroad act is a proper police regulation.* Section 8 of the Railroad act, which requires railroad companies to construct and maintain crossings, and approaches thereto, so that they shall be at all times safe as to persons and property, applies to all railroads, whether built before or after the passage of the act; and its enforcement in proper cases does not violate the provisions of the constitution against impairing contracts or taking private property without compensation.

2. SAME—*section 8 of Railroad act does not require railroad to maintain the pavement of sub-way.* Section 8 of the Railroad act, requiring railroad companies to construct and maintain crossings, and the approaches thereto, so that they shall at all times be safe for persons and property, does not apply to a sub-way crossing in a street established after the road was constructed, to the extent of requiring a railroad company, after it has once paved the roadway of the sub-way and its approaches, to maintain such pavement in good repair.

3. SAME—*when railroad company cannot be required to re-pave viaduct roadway.*  Neither section 10 of the charter of the Illinois Central Railroad Company, requiring intersected roads to be so restored as not to impair their usefulness, nor section 8 of the act relating to the fencing and operation of railroads, requires the company to re-construct the pavement and sidewalks of a sub-way and its approaches, in a street established after the road was constructed, after the pavement and sidewalks which it constructed when the sub-way was made, become worn out.

4. SAME—*charter of the Illinois Central Railroad Company is a contract.*  The charter of the Illinois Central Railroad Company is a contract between it and the State and is entitled to the same observance as a contract between individuals, but, like all other contracts, it is subject to the power of the State, in the exercise of its police powers, to enact such laws as may be necessary to protect the health, comfort and welfare of the public and to provide for the safety of persons and property.

APPEAL from the Circuit Court of Cook county; the Hon. LOCKWOOD HONORE, Judge, presiding.

This suit was begun by appellant, the city of Chicago, filing a petition praying a writ of *mandamus* against appellee, the Illinois Central Railroad Company, ordering and directing said railroad company to re-construct the pavement and repair the sidewalks at the sub-way crossing of said railroad and Sixty-third street, in the city of Chicago. At the time the Illinois Central Railroad Company was constructed there was no Sixty-third street and no crossing at the place where it is now located. Said street was created in 1868 as one of the streets of what was then the village of Hyde Park. In 1889 the village of Hyde Park was annexed to and became a part of the city of Chicago and Sixty-third street became one of the streets of said city. From the time said street was opened it crossed the tracks of the railway company at grade, until the tracks of said company were elevated in obedience to an ordinance adopted by the city council of the city of Chicago in 1892. Said ordinance required Sixty-third street to be carried under the tracks of said railroad and a clear space left of

twelve and one-half feet between the surface of the road-way and the superstructure of the railroad carried over it. In order to provide this clear space it became necessary, and the ordinance authorized, that the surface of the street be depressed or lowered about five feet where it passed under the railroad tracks. This also required the roadway of the street to be inclined from the level or grade of the street as it then existed to the level of the roadway under the tracks, so as to afford proper approaches to the crossing under the railroad. Section 5 of the ordinance reads as follows: "The cost of constructing suitable approaches to the depressed streets under the railroad tracks, and of pav-ing the streets under the railroad tracks and the approaches thereto, and constructing suitable sidewalks and providing for water pipes and drainage in said depressed streets, shall be paid by the railroad company, the work to be done in accordance with plans approved by the commissioner of public works and under his direction." In pursuance of the ordinance appellee elevated its tracks over Sixty-third street, restored and paved the street, provided for drainage of the sub-way and constructed sidewalks. The petition avers that from constant use, natural deterioration and de-cay, the pavement in the sub-way and of the east approach thereto has become so worn, broken and unsafe as to re-quire immediate re-construction; also, that the sidewalks have become so worn and broken as to be unsafe for public travel and the public convenience and safety require that they be repaired. The petition further avers that appellant repeatedly notified appellee of the condition of the pave-ment and sidewalks and demanded that it re-construct the pavement and repair the sidewalks, but that appellee refused to do so; that on the 28th of October, 1907, the city coun-cil of said city of Chicago passed an ordinance requiring appellee to re-construct the pavement and repair the side-walks, and afterwards again demanded of appellee that it re-construct said pavement and sidewalks in accordance

with the specifications contained in the ordinance, but appellee again refused to do so; that thereupon the petition in this case was filed by the city of Chicago praying a writ of *mandamus* directed to appellee, commanding it forthwith to re-construct the pavement in the sub-way and the east approach thereto and to repair the sidewalks, in accordance with the plans and specifications contained in the ordinance adopted October 28, 1907.

Appellee filed a general and special demurrer to the petition. The special causes of demurrer were: First, the ordinance under which it is sought to compel appellee to re-construct the pavement and repair the sidewalks is in conflict with section 14 of article 2 of the constitution of the State of Illinois and of clause 1 of section 10, article 1, of the constitution of the United States, in that it is an attempt to impair the obligation of a contract; second, said ordinance is in violation of section 2 of article 2 of the constitution of the State of Illinois and of section 1 of article 14 of the amendments to the constitution of the United States, in that it would deprive appellee of its property without due process of law; third, said ordinance is in violation of section 13 of article 2 of the constitution of the State of Illinois, in that it proposes to take private property for public use without just compensation; fourth, said ordinance is in violation of section 1 of article 14 of the amendments to the constitution of the United States, in that it would deny appellee the equal protection of the laws. The circuit court sustained the demurrer and entered judgment dismissing the petition. From that judgment the city of Chicago has prosecuted this appeal.

EDWARD J. BRUNDAGE, Corporation Counsel, EDWIN H. CASSELS, and EMIL C. WETTEN, for appellant.

JOHN G. DRENNAN, (J. M. DICKINSON, of counsel,) for appellee.

Mr. Justice Farmer delivered the opinion of the court:

The elevation of appellee's tracks rendered necessary tearing up the pavement and sidewalks and lowering the surface of the street under the tracks for a sufficient distance on each side to provide proper and suitable approaches to the sub-way. All this was done by appellee at its own expense. Appellant contends that it is appellee's duty to forever maintain and keep in repair said street and sidewalks; that the ordinance requiring it to do this is not in violation of the charter provisions of appellee, and is a valid exercise of the police powers of the city of Chicago under its charter and under section 8 of "An act in relation to fencing and operating railroads," approved March 31, 1874, in force July 1, 1874.

The law is well settled by decisions of this court that said section 8, and other sections of the same act, are police regulations, and apply to railroads built before as well as after the adoption of said act, and its enforcement in cases to which it is applicable does not violate the constitutional provisions against taking property without due process of law, or taking private property without just compensation, or against impairing the obligation of contracts. (*Chicago and Northwestern Railway Co.* v. *City of Chicago,* 140 Ill. 309; *Illinois Central Railroad Co.* v. *Willenborg,* 117 id. 203.) If it be determined that section 8 is applicable to the facts in this case the appellant's position would be correct.

Section 10 of appellee's charter provides that "said corporation may construct their said road and branches over or across any stream of water, water-course, road, highway, railroad or canal which the route of the road shall intersect, but the corporation shall restore the stream or water-course, road or highway thus intersected to its former state or in a sufficient manner not to have impaired its usefulness. Whenever the track of said railroad shall cross

a road or highway, such road or highway may be carried under or over said track, as may be found most expedient."

The charter of appellee constitutes a contract between it and the State and is entitled to the same observance as a contract between natural persons. (*Illinois Central Railroad Co.* v. *People*, 95 Ill. 313; *Illinois Central Railroad Co.* v. *City of Bloomington*, 76 id. 447; *People* v. *Ketchum*, 72 id. 212.) It is well understood, of course, that this contract, like all others, is subject to the power of the State, in the exercise of its police powers, to pass such laws as may be necessary to protect the health and provide for the safety of persons and property. In order, therefore, to render appellee liable to re-construct the pavement and repair the sidewalks in question, it must appear either that this was made its duty by the terms of its charter or by a law passed by the State in the exercise of its police powers.

The charter of appellee contains no provision making it the duty of the railroad company to maintain a street or highway intersected by it. It is made the duty of the corporation to restore the road or highway to its former state or in a sufficient manner not to have impaired its usefulness, and while we have no doubt of the right of the State, in the exercise of its legitimate police powers for the protection and safety of persons and property crossing the railroad track, to require the corporation to do anything reasonably necessary for the accomplishment of that object, no other object or purpose would justify the State in adding this additional burden to the provisions of the contract between it and the corporation. In *Town of Lake View* v. *Rose Hill Cemetery Co.* 70 Ill. 191, it was said the police power of the State is co-extensive with self-protection, and is not inaptly termed "the law of overruling necessity;" and it was there further said that it is "that inherent and plenary power in the State which enables it to prohibit all things hurtful to the comfort, safety and welfare of society." In *City of Bloomington* v. *Illinois Central Railroad Co.* 154

Ill. 539, speaking of the objects and purposes sought to be accomplished by the legislature by section 8, this court said (p. 544) : "Safety of persons and property is the object of the requirement. The grading of the approaches and the planking between the rails and tracks make it possible for men and teams to cross easily and quickly, and thus avoid collision with passing trains, thereby insuring their own safety and the safety of the persons and property upon the train." Here the street in question did not cross the railroad tracks but passed under them. Appellee is required to maintain its structures supporting the tracks in such condition as to render it safe for persons and property passing underneath them, but nothing it could do in the way of maintaining and re-paving the streets would afford any protection from trains to persons or property passing underneath its tracks. It is not denied that when the appellee elevated its tracks it restored the streets and sidewalks to proper condition, and in our opinion its duty ended there. The future maintenance of the streets was not imposed upon the corporation by its charter nor by any law passed in the exercise of the police powers of the State. In *Ruhstrat* v. *People,* 185 Ill. 133, it was said the police power is limited to the enactment of laws demanded for the public health, comfort, safety or welfare of society.

In *Blanchard* v. *Lake Shore and Michigan Southern Ry. Co.* 126 Ill. 416, and *Cleveland, Cincinnati, Chicago and St. Louis Railway Co.* v. *Halbert,* 179 id. 196, it was held that the statute requiring a bell to be rung for eighty rods before reaching a crossing had no application to a crossing under a viaduct, where the travel over the tracks was upon the elevated structure and out of the way of the trains passing over the tracks. In the last mentioned case it was said (p. 202) : "The statute being applicable to crossings of streets and railroad tracks, it would follow, if its application is not properly restricted to crossings having a common grade, that trains operated upon tracks elevated above

or depressed below the level of the streets in cities, where the trains are perhaps at all times within much less than eighty rods of a crossing, would be required to keep the whistle blowing or the bell ringing continuously, to the great annoyance of the public, amounting practically to a nuisance. It is not indispensable to the protection of the persons and property of those passing along a highway with intent to cross the track of a railroad which crosses the highway either so far above or so far below the level of the highway as that there is no danger a collision will occur, the statute should be given the construction given it by the trial court, for, as we have seen, in the entire absence of any statutory regulation the law requires companies operating railroad trains shall adopt every precaution which common prudence would dictate to be necessary, under the particular circumstances of the occasion, to notify persons about to proceed along the highway on, over or under the track of the railroad, that a train is approaching the place of crossing. In the case at bar the highway at the place of crossing consisted of a bridge so far above the track of the road as to preclude all danger of collision. Whether notice of the approach of the train was given by ringing the bell or sounding the whistle of the locomotive was proper for consideration, together with other facts and circumstances appearing in the proof as bearing upon the question of fact whether such notice of the approach of the train had been given as ordinary prudence and due regard for the safety of the citizen demanded; but it was not true, as a matter of law, that it was the statutory duty of the company to cause the 'bell of the locomotive to be rung or its whistle to be sounded from a point when the same (the locomotive) was eighty rods distant from said highway and until the crossing was reached,' as the court advised the jury by the instructions." The requirement that the bell be rung or the whistle sounded in approaching a crossing is a police requirement of the same character as

the requirement of section 8 as to crossings, and if the former has no application to crossings where the travel is over or under the railroad tracks, we cannot see how the latter could have such application.

Much reliance is placed upon *State* v. *St. Paul, Minneapolis and Manitoba Railway Co.* 98 Minn. 380, where the Supreme Court of Minnesota held the railroad company was liable to construct and maintain a bridge over its tracks in the city of Minneapolis. We do not regard that case as determining the questions involved in this case.

In *Illinois Central Railroad Co.* v. *City of Bloomington, supra,* the city laid out a street within its corporate limits across the right of way of the railroad company. That case arose prior to the passage of section 8 in its present form. At that time the statute required railroad corporations to construct and maintain the crossings of public highways outside the corporate limits of cities and villages. The city of Bloomington by ordinance directed the railroad company to construct the crossing and approaches thereto. The railroad company refused to do so and the work was done by the city and suit brought to recover the costs thereof. The city of Bloomington relied upon its charter authorizing it by ordinance to require railroad companies to construct and keep in repair suitable crossings at the intersections of their roads with the streets. It was held that to require the railroad company to comply with the ordinance would be placing an additional burden upon it, and that the ordinance therefore was in violation of the constitution.

In our opinion the ordinance adopted by the city of Chicago was invalid, and said city had no authority, either under section 8 of the statute referred to or the provisions of its charter, to require appellee to re-pave the street, and the court correctly sustained the demurrer and dismissed the petition.

The judgment is therefore affirmed.

*Judgment affirmed.*