THE CITY OF CHICAGO, Appellee, vs. THE PITTSBURGH, FT. WAYNE AND CHICAGO RAILWAY COMPANY, Appellant.

*Opinion filed December 21, 1910.*

1. MUNICIPAL CORPORATIONS—*right of city to require railroad company to build viaducts.* A city has power, in granting permission to a railroad company to lay its tracks in the city, to require the company to construct and maintain proper crossings at streets, alleys and highways, and, if the safety of the public so requires, to erect and maintain viaducts and proper approaches thereto.

2. SAME—*approach to viaduct is ordinarily a part of the viaduct.* The approach to a viaduct over railroad tracks is ordinarily a part of the viaduct, but the questions as to which is the viaduct and which is the approach, where one ends and the other begins, and what is a street or highway as distinguished from an approach, are more questions of fact than of law, and depend for their determination largely upon the facts and surroundings in each case.

3. SAME—*railroad not required to maintain what is in reality a street or highway.* While a railroad company must keep and maintain its crossings so they will continue to meet the needs and requirements of an increasing population, yet it is not necessarily required to keep and maintain that which is for every practical purpose a street or highway, even though it is incidentally used as a part of the ascent or approach to reach a viaduct.

4. SAME—*when railroad cannot be compelled to pave ascent to viaduct as an "approach."* Where the grade of a street for an entire block is raised to conform to the ascent to a railroad viaduct, and the street is filled from building line to building line, buildings are erected to conform to such grade, curbing is set, sidewalks built, pavement laid and man-holes provided, such ascent must be regarded as a street and not merely an approach to the viaduct, and the railroad company cannot be compelled to re-pave the surface at its own expense.

APPEAL from the Municipal Court of Chicago; the Hon. JOHN H. HUME, Judge, presiding.

LOESCH, SCOFIELD & LOESCH, for appellant.

EDWARD J. BRUNDAGE, Corporation Counsel, and CHAS. M. HAFT, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

This is an appeal from a judgment for $6377.02 entered against appellant in the municipal court of Chicago May 20, 1910. The judge by whom the case was heard certified that the rights of the respective parties depended upon the validity of a municipal ordinance and the public interests required that the appeal should be taken directly to this court.

The city of Chicago, October 21, 1907, passed an ordinance directing appellant to re-pave Eighteenth street between the center line of Canal street and the east line of Mechanic street, either with granite block or standard pavement, put in new curbing, man-holes, and such accessories as are incident to the re-pavement of streets, and to lay new sidewalks. The ordinance further provided that if appellant failed to enter upon the performance of the work within seven days the commissioner of public works should perform the work therein specified and charge the same to appellant, to be recovered by a suit in a proper form of action. Appellant refused to do the work required by the ordinance, which was thereafter performed by the city, and this suit is brought to recover from appellant a portion of the cost.

Eighteenth street runs east and west. The appellant's tracks extend north and south. When said railroad entered the city of Chicago it crossed Eighteenth street at grade and so continued for years thereafter. The Chicago and Alton Railway Company parallels the tracks of the appel-

lant company on the east side at this point. March 22, 1876, the city council of said city made an appropriation towards the erection of a viaduct over the tracks of appellant and the Chicago and Alton railway at Eighteenth street. On April 15, 1878, the city council passed an ordinance directing the commissioner of public works to erect a viaduct over said tracks, with stone abutments and iron framework, requesting the appellant to contribute $14,000 towards said construction, and that said viaduct be constructed under the general superintendence of the department of public works and the chief engineer of appellant. The ordinance provided that the city should maintain the approaches and the floor of said viaduct at its own expense and do all ordinary repairs. The viaduct was constructed in accordance with the terms of such ordinance. After this work was completed the grade of Eighteenth street from the center line of Canal street to the west line of Mechanic street was established. Canal street extends north and south across Eighteenth street, and Mechanic street, also extending north and south, is a short block east of Canal. The grade of Eighteenth street between the center line of Canal street and the west line of Mechanic street was obtained by depositing earth in the street from building line to building line, to the necessary height. The surface of this fill was paved, man-holes were provided, curbing set and sidewalks built, and the street, except for the slope or grade of six or seven feet between Canal and Mechanic streets, is to all appearances a city street. East of Mechanic street the approach to the viaduct is constructed of planking and a sub-structure of woodwork or iron. On the south side of Eighteenth street, between Canal and Mechanic streets, stands a large business building, occupying the entire distance between said streets and abutting on the sidewalk on Eighteenth street. At the north-west corner of Mechanic and Eighteenth streets stands a business house built to the street line and abutting on the sidewalk

2 4 7 — 2 1

on said streets. Both of these buildings conform to the grade of the street as now established. Appellant does not own any property on Eighteenth street between Canal and Mechanic streets, and has no interest therein, either directly or indirectly, all such property being owned by private interests for business purposes. No question is raised on this record as to paving the street or keeping up the approach east of Mechanic street.

It is insisted by the city that all of Eighteenth street from Canal street to the viaduct proper over the railways, including pavement, man-holes, catch-basins, curbing and sidewalks, is a part of the approach to said viaduct and therefore a part of the viaduct, and for that reason the city can compel appellant to keep and maintain all of said approach in such condition of repair as the convenience of the public or the safety of lives and property may require; that notwithstanding the ordinance under which the viaduct was constructed provided that the city should maintain and repair these approaches, the city authorities by said ordinance could not waive the authority of the city, under its police power, to require appellant to maintain and repair said viaduct, including its approaches. The conclusion that we have reached in this matter renders it unnecessary for us to consider that question. There can be no doubt that under the provisions of the ordinance granting the appellant the right to construct its railway in the city of Chicago, as well as under the statutes of the State concerning the control of railways, the public authorities can compel appellant to construct and maintain proper crossings at streets, alleys and highways, or, if the safety and security of the public require, to erect and maintain viaducts with proper approaches thereto.

Under the common law, and generally under the statutes in this country, a bridge includes the abutments and such approaches as will make it accessible and convenient for public travel. It has been held in some cases that

whether a particular bridge includes approaches depends on the circumstances in which the word "bridge" is used. (*State* v. *Illinois Central Railroad Co.* 246 Ill. 188, p. 286.) What is true as to a bridge and its approaches is equally true of a viaduct and its approaches. Ordinarily an "approach," as that term is used, is considered a part of the viaduct. What would be regarded as approaches would depend largely upon the demands of the traveling public and "upon what would be reasonable under the circumstances and local situation in each case. It is manifest that they do not and should not, in all cases, include all that part of the right of way that is covered by the street or highway and is not immediately at the crossing." (*City of Bloomington* v. *Illinois Central Railroad Co.* 154 Ill. 539.) What is a viaduct proper and what is an approach, where one begins and the other ends, and what is a street or highway as distinguished from the approach, are more questions of fact than of law and are sometimes not easy to decide. (*Tolland* v. *Willington,* 26 Conn. 578.) The material of which the approach was constructed might or might not have weight in deciding whether said approach was a part of the viaduct or of the street. If the driveway or approach to a viaduct was only of sufficient width for the use of teams in going over the viaduct, occupying a comparatively small part of the street or highway, and not of a character to be used for any other street purposes, the question whether it was constructed of permanent and lasting material or of material that would have to be replaced within a few years could have little weight in deciding the matter here under consideration. Such a structure, whether permanent or temporary, would ordinarily be held to be an approach and a part of the viaduct. If a viaduct were to be constructed in a depression some two or three blocks distant from the higher ground, and the public authorities and owners of adjacent property thought it wise to construct the connection with such viaduct for the en-

tire distance from the viaduct to the ridge, so as to make such connection all on the same level, whether such structure from the viaduct to the ridge would be considered a part of the approach or a part of the street would depend upon the character of the structure and the situation with reference to surrounding property. No one would contend that if the whole distance, for the full street width, from the viaduct to the ridge was filled in and made a solid street and the buildings on either side constructed along such street on that grade, the connection in question would be considered an "approach" to the viaduct, as that term is usually understood. On the other hand, if such structure were built up in the air and below it was a street bordered by buildings built at the street grade, such a structure might be held to be an approach to the viaduct. If the rise to a viaduct from the ordinary surface of the ground is not more than six or eight feet, it is not generally thought necessary to commence the ascent or approach more than a block away from the viaduct proper. If, however, the public authorities and the property owners along a street for three or four blocks all agree to distribute this grade of six or eight feet over said three or four blocks and have the pavement, curbs, sidewalks and buildings for that distance conform thereto, it could hardly be argued that the whole of such three or four blocks was a part of the approach, which the railway company constructing the viaduct would be compelled to maintain and keep in repair. As was said by this court in *City of Bloomington* v. *Illinois Central Railroad Co. supra,* on page 547: "What is to be considered as the extent of the approaches to the railroad crossing must be determined by what is reasonable in the particular case." The railroad must keep and maintain its crossings so that they will continue to meet the needs and requirements of an increasing population in respect to the safety of persons and property; (*Northern Pacific Railway Co.* v. *Duluth,* 208 U. S. 583;) but this

does not necessarily require the railroad to keep and maintain that which is for every practical purpose a street or highway, even though incidentally it is used as a part of the ascent or approach to reach the viaduct. The railroad company in *State* v. *St. Paul, Minneapolis and Manitoba Railway Co.* 98 Minn. 380, was compelled, under the police power of the State, to erect and maintain a viaduct and long approaches over its railroad. But the same court held in *State* v. *Northern Pacific Railway Co.* 99 Minn. 280, that there were reasonable limitations upon the liability of the railway company to maintain and repair the so-called viaduct approaches; that where a part of these approaches was filled in permanently the full width of the street, resulting in a mere raising of the street grade, such permanently filled portions of the improvement constituted no part of the viaduct or "approaches," and that the curbing, paving and sidewalk upon those portions could not be charged to the railroad company.

This court decided in *People* v. *Illinois Central Railroad Co.* 235 Ill. 374, where the railroad company had elevated its tracks and constructed a subway at a certain point for a street, that under the provisions of its charter (similar to the provisions of appellant's charter) and the general police power resting in the State, under the principles of law here invoked, the city could not require the railroad to maintain the pavement of the subway or its approaches. The situation of Eighteenth street between Canal and Mechanic streets is very similar to that of the approaches to the subway in the case last referred to. The reasoning of this court in that case as to the authority of the city, under its police power, to compel the railroad company to pave the subway and approaches applies with equal force to the authority of the city in this case to compel appellant, under the police power, to pave Eighteenth street between Canal and Mechanic streets.

It is insisted by counsel for the city that *McFarlane* v. *City of Chicago*, 185 Ill. 242, and *City of Chicago* v. *Nodeck*, 202 id. 257, are controlling in favor of the city on the questions here involved. We cannot so hold. The basis of those decisions was, that there was a contract between the railroad company and the city that in consideration of certain privileges granted to said company it should construct, maintain and keep in repair approaches to certain viaducts, and that because of such contract the property owners abutting on the said approaches could not be compelled to pay for the paving of said approaches; that to compel the property owners to pay for the work which the railroad company had agreed to construct would be unjust. This is also the reasoning in *City of Chicago* v. *Newberry Library*, 224 Ill. 330, and the ordinance in each of these three cases, requiring the property owners to pave the portions of the street there in question, was held unreasonable and void. These decisions do not support the contention of the city.

Whether Eighteenth street between Canal and Mechanic streets should be re-paved and kept in repair by special assessment or by general taxation is not before us for decision. The argument of counsel for the city that it would be unjust to the abutting property owners to compel them to re-pave this street because they have been damaged by the elevation of the street above its former grade is without force. If the property owners have been damaged by such elevation, according to the long settled law of this State they have a remedy for such damages. *Chapman* v. *City of Staunton*, 246 Ill. 394.

On the facts in this record the city of Chicago was without authority to pass or enforce the ordinance in question requiring appellant to re-pave and keep in repair West Eighteenth street from Canal to Mechanic street. The judgment of the municipal court must therefore be reversed.

*Judgment reversed.*