City of Chicago, Appellee, v. Chicago & Western Indiana Railroad Company, Appellant.

Gen. No. 16,116.

1. MUNICIPAL CORPORATIONS—*power to compel railroad to repair viaduct approaches.* A city ordinance, requiring a railroad to repair an approach to a viaduct, to be valid must either be referable to a contractual relation between the city and the railroad or be an order by the city council for the enforcement or exceution of a police power belonging to the city.

2. MUNICIPAL CORPORATIONS—*city estopped to require repavement of approach to viaduct.* Where a railway agrees with city to erect and maintain a viaduct and construct approaches, it does not thereby become obligated to repave approaches, and the city is estopped, years later in the exercise of its police power, to require repavement of approaches when both parties have acted in reliance on a distinction between approaches and viaduct.

3. MUNICIPAL CORPORATIONS—*authority of city officer.* Where a contract between a city and a railway has been followed by the expenditure of thousands of dollars, and both parties have acted under it for many years, it is too late to question the authority of the officer who signed it.

4. MUNICIPAL CORPORATIONS—*city may be estopped to exercise police power.* Although a city cannot by contract alienate its police power, yet it may be equitably estopped by circumstances which make it unconformable to right and justice to exercise such power.

Appeal from the Municipal Court of Chicago; the HON. JOHN H. HUME, Judge, presiding. Heard in this court at the October term, 1909. Reversed. Opinion filed November 18, 1912. *Certiorari* denied by Supreme Court (making opinion final).

**Statement by the Court.** On September 15, 1879, the City Council of Chicago passed an ordinance granting permission to the Chicago & Western Indiana Railroad Company to lay and operate a railroad with one or more tracks and such switches, sidings and turnouts as might be necessary from the southern boundary of Chicago to such terminus as it might establish between the east bank of the south branch of the Chicago river and the west side of State street between Sixteenth street and the south line of Van Buren street in said city.

The railroad company was given the right to cross any intervening streets or alleys along the line of said route, being subject at all times to the direction of the Department of Public Works or other proper department or officer of said city in the construction of its tracks, in making the crossings or connections with other roads, and in keeping in repair so much of said streets and crossings as might be occupied with its tracks, switches and turnouts.

Section 4 of said ordinance was:

"The permission, authority and privileges hereby granted are upon the express condition that the said Railroad Company shall erect and maintain viaducts over any of its said tracks or any street or streets of said city which may be crossed by its said tracks where and as the said City Council may from time to time require, and under the supervision of the Department of Public Works or other proper department or officer of said city, and erect and construct the approaches to all such viaducts with proper areas on either side of said approaches. Provided, however, that where any such viaduct can not be built at any such street crossing without the same be built over the track or tracks of some other railroad company or companies, then the said Chicago and Western Indiana Railroad Company

454     APPELLATE COURTS OF ILLINOIS.

City of Chicago v. Chicago & Western Ind. R. Co., 174 Ill. App. 452.

shall only be obliged to join with such other last mentioned railroad company or companies in the construction and maintenance of such viaduct, and to pay their fair proportion of the cost of such viaduct or viaducts, and if such other railroad company or companies shall not join in the erection of any such viaduct, then when the proportion of such other company or companies shall be otherwise provided the said Chicago and Western Indiana Railroad Company shall pay its fair proportion of the cost of any such viaduct.''

Section 5 was:

''The said railroad company shall be subject to all general laws and ordinances of the City of Chicago in relation to railroads which are now or may hereafter be in force.''

March 7, 1881, the city passed another ordinance, granting permission to the Chicago & Western Indiana Railroad Company to raise the bridge over the south branch of the Chicago river not to exceed three and one-half feet, and to erect at the east end of the bridge a suitable viaduct fifty-eight feet long, and to raise the approaches at both ends of the bridge and the approach from Lumber street to connect with the west approach according to a plan in the office of the Department of Public Works—provided that the raising of the bridge and the building of the viaduct, together with all of the said approaches should be at the expense and cost of the company.

The second section of the ordinance made the further condition that whenever the city should build or erect another bridge or widen the existing one, at that point, then the Chicago & Western Indiana Railroad Company should at its own cost and expense build the abutments at the east end of said bridge and at the east end of said viaduct of stone masonry, and should at its own cost and expense renew the said viaduct of such material and width as might be required by said city, and further should pay to the city the cost and expense of the additional construction required by in-

creased heights of the center pier of said bridge whenever the city should build another bridge or widen the existing one—all of said work to be constructed according to the plans of the Department of Public Works and to be under the superintendence and to the satisfaction of the Commissioner of Public Works.

The second section ends thus:

"The viaduct mentioned in the foregoing Sections is to be maintained and kept in repair by and at the cost and expense of said Chicago & Western Indiana Railroad Company, subject to the direction and superintendence of the proper officer authorized by the said City."

The third section makes the rights granted conditioned on the work being so done as not to interfere with travel across the bridge for more than thirty days, and proceeds, "and upon the further condition that nothing herein contained shall operate or in any way be construed as operating to ratify or in any manner confirm the ordinance passed September 15, 1879, purporting to grant to said railroad company permission and authority to lay down, maintain and operate a railroad in said city or as in any manner extending the rights and privileges purported to be granted by said last mentioned ordinance or the time within which such rights or privileges were to be exercised."

August 10, 1887, the Chicago & Western Indiana Railroad Company and the City of Chicago entered into a written agreement, which recited that the Company had certain rights and was under certain obligations under ordinances of the City as to the erection and maintenance of a viaduct at 18th street and the approaches thereto and a bridge across the river at said street; that the ordinances provided that the erection of the viaduct and the improvements should be according to plans and specifications of the Department of Public Works, and under the superintendence and to the satisfaction of the Commissioner of Public Works; that it was proposed by the City to erect an-

456    APPELLATE COURTS OF ILLINOIS.

City of Chicago v. Chicago & Western Ind. R. Co., 174 Ill. App. 452.

other bridge at 18th street, and that one of the ordinances required that the Company should pay the entire expense of the eastern abutment of said bridge and a portion of the expense of building the center pier to said bridge. This agreement provided *inter alia*:

"That a viaduct should be constructed at 18th street, as shown on attached plans, which might be varied by joint consent of engineers for both parties; that the bridge at 18th street and the piers and abutments therefor, should be constructed as indicated by the plans attached, which might be varied by the City Engineer; that the work done upon and in connection with such bridge, viaduct and approaches should be done under the supervision and control of the Department of Public Works of Chicago; that contracts for the work should be let by the Department of Public Works after having been approved by endorsement by the Company; that the said party of the first part should pay as its proportion of the cost and expense of the work contemplated, one-sixth of the cost of the centre pier of the swing bridge to be constructed  *  *  * and should pay the entire cost of all the work shown upon the plans annexed east of and including the east pier of said bridge, viaducts, piers, abutments, protections and approaches shown upon said plans, and including said protections to said east pier of said bridge and also all other expenses connected with said construction to the end of said approach at the west curb line of Wentworth avenue, excepting only so much of said expense as was agreed to be paid by the Chicago and Alton Railroad Company, by a contract between said Chicago & Alton Railroad Company and the second party hereto of even date herewith, wherein it is agreed that said Chicago & Alton Railroad Company shall pay as its proportion of the expense of said viaduct one-half of the cost of the East pier at Grove street, and one-half of the cost of the West pier at Grove street, and the entire cost of a bridge or viaduct over the tracks of said Chicago and Alton Railroad Company in Grove street, and extending from said East pier to said West pier over Grove street."

It was further agreed that the viaduct from the easternmost pier of said bridge to the easternmost pier of said viaduct at the point marked X on the plan attached (excepting only the portion thereof mentioned as extending over the tracks of the Chicago & Alton Railroad Company in Grove street, which was to be built at the cost and expense of said Chicago & Alton Railroad Company) should be forever maintained and kept in repair by and at the cost and expense of said Chicago & Western Indiana Railroad Company, subject to the direction and superintendence of the proper officer authorized by the City.

A provision was included in said contract, that nothing in it contained should be construed as in any way limiting the liability under the ordinances mentioned in it, save as to the proportion of the cost and expense of the work mentioned in the clauses above quoted.

September 2, 1887, the City Engineer notified the Chicago & Western Indiana Railroad Company that it might "take down and remove the viaduct with the approaches thereto over" its "tracks on 18th street at" its "earliest convenience."

October 10, 1887, a supplemental agreement was entered into between the Chicago & Western Indiana Railroad Company and the City of Chicago, which recited that a certain contract for the erection and completion for public use of a viaduct on 18th street had been entered into between the parties, in which it was stipulated that the Chicago & Alton Railroad Company was to pay for a certain proportionate share of the cost of constructing said viaduct, and that the Chicago and Alton Railroad Company had refused and failed to sign a contract with the City, and therefore provided that:

"It is mutually agreed that the City of Chicago will pay the proportionate share of the construction of said viaduct that was by the terms of said contract to be paid by the Chicago and Alton Railroad Company, and the City of Chicago hereby agrees to pay the said

458    APPELLATE COURTS OF ILLINOIS.

City of Chicago v. Chicago & Western Ind. R. Co., 174 Ill. App. 452.

proportional share that under said contract was to be paid by the Chicago and Alton Railroad Company upon certificates to be issued by the City Engineer of the City of Chicago, the Chicago and Western Indiana Railroad Company not being in any manner liable for such proportionate share herein assumed by the city of Chicago.''

It was stipulated in the trial of the case at bar that the viaduct was built about 1887 or 1888, and that the Chicago & Western Indiana Railroad Company paid the expense of building so much of the viaduct as covers the railroad tracks of the Western Indiana; and it appears in evidence that the amount expended by the Railroad Company for the construction required was $23,329.58. It was also admitted by the Railroad Company that the viaduct itself goes over some tracks owned by the Western Indiana, but that it covers as well tracks of other railroads, and that those railroads were the Chicago & Alton, the Santa Fe and the Chicago, Madison & Northern taken over for use by the Illinois Central. It was also agreed that ''after the Chicago & Western Indiana Railroad Company constructed the east approach to the 18th street viaduct the City of Chicago from time to time made repairs on the roadway of that approach as repairs became necessary in the usual course of events, and that the City paid those expenses and never requested or in any way demanded that the Chicago & Western Indiana Railroad Company compensate the City for the money paid out on account of the repairs so made, nor did the City of Chicago ever request the Chicago & Western Indiana Railroad Company to make any repairs when repairs were necessary to be made to the east approach of the 18th street viaduct, until November, 1907.''

In September, 1907, a plan entitled ''Survey of East 18th Street Viaduct Approach'' was made by the Bureau of Bridges and Harbors of the City of Chicago, and under it an improvement to the East approach

to the 18th street viaduct bridge over the South Branch of the Chicago River was made.

November 4, 1907, the City Council of Chicago passed an ordinance entitled "An Ordinance requiring the Chicago and Western Indiana Railroad Company, The Atchison, Topeka and Santa Fe Railway Company, the Chicago & Alton Railway Company and the Illinois Central Railroad Company to repair the east Eighteenth Street Viaduct approach."

Its first section declares the work necessary; the second orders the said four roads to proceed within seven days of the passage and approval of the ordinance to repair the East Eighteenth Street viaduct approach in accordance with the plans on file (the one hereinbefore last referred to). It proceeds:

"Said repairs to be made as follows:

"That the roadway on the approach of East Eighteenth street from a point one hundred fifty feet east of the west curb line of Wentworth avenue to the east end of the viaduct, said roadway varying from a width of forty-five (45) feet to a width of thirty-nine (39) feet and the roadways of all intersecting streets extending from the curb line to the street line produced on each side of said East Eighteenth street and also parts of sidewalks on both sides of said street, as herein specifically provided."

Then follow the specifications for the pavement, etc. The third section is:

"In the event that the said The Chicago and Western Indiana Railroad Company, the Atchison, Topeka and Santa Fe Railway Company, Chicago and Alton Railway Company and Illinois Central Railroad Company shall fail to begin the making of said repairs in the manner provided by Section 2 of this ordinance within seven (7) days after they are notified so to do by the Commissioner of Public Works, said Commissioner of Public Works is hereby authorized and directed to immediately proceed to make the repairs provided for by Section 2 of this ordinance, and the expense thereof shall be charged to and paid by the said The Chicago

460    APPELLATE COURTS OF ILLINOIS.

City of Chicago v. Chicago & Western Ind. R. Co., 174 Ill. App. 452.

and Western Indiana Railroad Company, The Atchison, Topeka & Santa Fe Railway Company, Chicago and Alton Railway Company and Illinois Central Railroad Company by the City of Chicago in any proper action instituted therefor.''

Section 4 is:

''In the event that said The Chicago and Western Indiana Railroad Company, the Atchison, Topeka & Santa Fe Railway Company, Chicago and Alton Railway Company, and Illinois Central Railroad Company shall fail to make said repairs in Section 2 provided for, and in consequence thereof the Commissioner of Public Works shall make said repairs as in Section 3 provided for, then and in such event, said The Chicago and Western Indiana Railroad Company, The Atchison, Topeka & Santa Fe Railway Company, Chicago and Alton Railroad Company, and Illinois Central Railroad Company shall pay to the City of Chicago as compensation for making said repairs ten per cent of the amount so expended, which shall, unless paid by said Railroad Companies, be recovered by said City of Chicago from said Companies in the same manner and together with the amount so expended for said repairs in any action instituted therefor.''

The fifth section is:

''Unless said Railroad Companies shall otherwise agree between themselves, they shall defray the expense of making said repairs or pay to the City of Chicago the amount accruing to it by virtue of this ordinance in case the Commissioner of Public Works shall make said repairs in the following proportion, to-wit:

The Chicago and Western Indiana Railroad Company, Fifteen Twenty-eighths (15/28).

The Atchison, Topeka & Santa Fe Railway Company, Nine Twenty-eighths (9/28).

Chicago and Alton Railway Company, Two Twenty-eighths (2/28).

Illinois Central Railroad Company, Two Twenty-eighths (2/28).''

December 13, 1907, the following letter from officers

of the City was sent to and received by the Chicago and Western Indiana Railroad Company:

"You are hereby notified to take steps immediately to repair the east approach to the E. 18th street viaduct, in accordance with an ordinance passed by the City Council on November 4, 1907, page 3000 Council Proceedings, a copy of which is attached hereto. Kindly acknowledge the receipt of this notice and state what stand you will take in regard to the matter.
Recommended by          John J. Hanberg,
      Thos. G. Phillipson,   Commissioner of Public Works,
         City Bridge Engineer,   By Paul Redieske,
Approved John Ericson,          Deputy Commissioner.
   City Engineer."

May 7, 1908, the City of Chicago entered into a contract with the M. H. McGovern Company, whereby the McGovern Company agreed "to furnish all material, appliances, appurtenances, etc., required for the performing of the necessary operations for repairing, constructing and paving the roadway on the east approach to 18th street viaduct, except the strip forming the right of way of the Chicago Railways Company, with granite block pavement.

Work was done under this contract by the McGovern Company, and the City paid to the said Company, under estimates certifying that the Company had "completed the paving and improvements on the east approach to the 18th street viaduct bridge over the South Branch of the Chicago River," the amount of $9,324.49. (This is by an evident misprint in the transcript of the record stated in the declaration as $1,324.29.)

May 3, 1909, the City of Chicago began in the Municipal Court of Chicago the present suit in *assumpsit* against the Chicago & Western Indiana Railroad Company. In its declaration it first sets out *in haec verba* the ordinance of September 15, 1879, and then avers that after the passage of the ordinance the traffic across said railroad authorized by it became so

462     APPELLATE COURTS OF ILLINOIS.

City of Chicago v. Chicago & Western Ind. R. Co., 174 Ill. App. 452.

great and the passage of cars thereon so frequent at the intersection of the railroad and 18th street, that said intersection became a dangerous place for persons and vehicles to cross, and it became necessary for the public safety and convenience that a viaduct be built along 18th street across the railroad tracks, and that said viaduct was accordingly constructed in a manner to insure the public safety and convenience at said crossing aforesaid. The declaration then makes the further averment that certain portions of said 18th street viaduct aforesaid became and were out of repair to such an extent as to render said viaduct unsafe and inconvenient for public travel and traffic, thereby making it necessary to repair the same, and that thereafter on November 4, 1907, the City Council passed the ordinance of that date, which is also set out *in haec verba.*

The declaration then alleges that although frequently requested to repair said viaduct in accordance with the terms of said ordinance, each of the Companies therein named refused and neglected to make said repairs, and that therefore the City of Chicago repaired said 18th street viaduct and expended in so doing the sum of $1,324.49-(sic.), which was a fair and reasonable expenditure for the work performed.*

The averment then follows that by reason of the premises, the defendant became obligated to pay to the plaintiff fifteen twenty-eighths of the amount expended by the City in making said repairs, together with ten per cent. of the amount in addition as provided in said ordinance.

The Railroad Company pleaded the general issue to this declaration, and the cause was tried before the court with a jury.

Evidence and stipulations were heard, showing the matters herein set forth. The testimony of Mr. Lein-

---

*The proof conclusively showing that $9324.49 was the amount expended by the City, we have treated the sum mentioned in the declaration as though it were this amount.

inger, Engineer of Streets for the City of Chicago, was offered by the City in connection with the estimates and the payments made by the City to the McGovern Company for the work done in 1908, and in connection with the plan under which the said work was done, and which was specified in the ordinance of November 4, 1907.

He testified that "the beginning, the bottom of the approach to the 18th street viaduct is at the west line of Wentworth avenue." He further testified that of the total amount, $9,324.49, paid for the work shown by the plans, $2,374.75 was for work done east of the west line of Wentworth avenue, and that the remainder, $6,949.74, was the entire amount in his opinion chargeable to the railroads.

At the conclusion of all the evidence the Railroad Company rested its defense on three propositions of law, which it tendered to the court. The court refused to hold each of them. They are as follows:

"1. An agreement dated August 10, 1887, having been entered into by and between the defendant Chicago & Western Indiana Railroad Company, party of the first part, and the City of Chicago, party of the second part, wherein it was agreed that said viaduct, to-wit, from the easternmost pier of said bridge to the easternmost pier of said viaduct at the point marked X on said plan, excepting only that portion thereof above mentioned extending over the tracks of the Chicago & Alton Railroad Company in Grove street (which is to be built at the cost and expense of said Chicago & Alton Railroad Company), shall be forever maintained and kept in repair by and at the cost and expense of said party of the first part, subject to the direction and superintendence of the proper officer, authorized by the City, and further, the City and Railroad Company having acted under said agreement for twenty years and the City having at all times maintained the *approaches* to said viaduct at 18th street, the defendant was by law under no obligation to maintain such approach and cannot legally be compelled to pay therefor.

"2. It having been ordained by the City Council of

464    APPELLATE COURTS OF ILLINOIS.

City of Chicago v. Chicago & Western Ind. R. Co., 174 Ill. App. 452.

the City of Chicago by section 4 of the ordinance of September 15, 1879, by which ordinance certain rights and privileges were granted to the defendant Chicago & Western Indiana Railroad Company, and which ordinance was approved by the mayor and was accepted by said defendant, as follows:

"The permission, authority and privileges hereby granted are upon the express condition that the said Railroad Company shall erect and maintain *viaducts* over any of its said tracks or any street or streets of said city which may be crossed by its said tracks where and as the City Council may from time to time require, and under the supervision of the department of public works or other proper office of said City, and erect and *construct* the approaches to all such viaducts with proper areas on either side of such approaches, etc.; and further, on the 4th day of November, 1907, the City Council of the City of Chicago having passed and the Mayor of the City of Chicago having approved a certain ordinance, which was in words and figures following:

"(Here follows *in haec verba* the first and the portion of the second section of the ordinance of November 4, 1907, ending with 'The said roadway of said approach of said East 18th street viaduct shall be paved.' * * *.)

"Now, therefore, said ordinance of November 4th, 1907, was invalid and not in accordance with the terms of section 4 of the ordinance of September 15, 1879, and consequently did not impose any duty upon defendant to maintain the roadway on the east approach to the viaduct in question at 18th street since it ordered defendant and others to pave the roadway 'from a point one hundred and fifty feet east of the east curb line of Wentworth avenue to the east end of said viaduct,' thereby ordering defendant to pave an area which was not part of the approach since said approach begins sixty-six feet west of the east line of Wentworth avenue.

"3. It having been ordained by the City Council of the City of Chicago by Section 4 of the ordinance of September 15, 1879, by which ordinance certain rights

and privileges were granted to the defendant Chicago and Western Indiana Railroad Company, and which ordinance was approved by the Mayor and was accepted by said defendant, as follows: 'The permission, authority and privileges hereby granted are upon the express condition that the said Railroad Company shall erect and *maintain* viaducts over any of its said tracks and as the City Council may from time to time require, and under the supervision of the department of public works or other proper department or officer of said City, and erect and construct the approaches to all such viaducts with proper areas on either side of such approaches,' etc., now therefore this defendant was only required by the terms of said ordinance to 'erect and *construct* the approaches to all such viaducts, and was not required to maintain the approaches to such viaducts.' ''

The court rendered judgment for the City of Chicago for $3,723.10, which was 15/28 of $6,949.74, the amount sworn by Mr. Leninger to have been expended by the City under the ordinance of November 4, 1907, for the work west of the west line of Wentworth avenue, and did not include anything for work done east of that line, nor the ten per cent. addition to the actual expenditure mentioned in the ordinance and claimed in the declaration and the affidavit attached thereto.

A motion for a new trial and a motion in arrest of judgment having been denied, the Chicago & Western Indiana Railroad Company appealed to this court and in this court, besides merely formal assignments of error, have complained of the refusal of the Municipal Court to hold as law the propositions of law before recited; and argue (a) that the ordinance of November 4, 1907, on which the action is based, is void as being too broad and requiring too much; (b) that its condition was not complied with in giving notice to railroads other than the defendant that repairs were required, and that consequently the City had no right to proceed under it; (c) that it was not consistent with nor justi-

466        APPELLATE COURTS OF ILLINOIS.

City of Chicago v. Chicago & Western Ind. R. Co., 174 Ill. App. 452.

fied by the ordinance of September 15, 1879, in the matter of the maintenance of approaches; (d) that the defendant having expended large sums of money upon a viaduct erected by virtue of the terms of a contract entered into August 10, 1887, by it and the City, the City is equitably estopped from rejecting said contract—which by exclusion negatives the obligation of the railroad to maintain and repair the eastern approach to the viaduct; and (e) that as an exercise of the police power said ordinance of November 4, 1907, was unreasonable and void.

WILLIAM L. REED and FRANCIS ADAMS, JR., for appellant; WILLIAM J. HENLEY, of counsel.

EDWARD J. BRUNDAGE, CHARLES M. HAFT and JAMES F. BURNS, for appellee.

MR. JUSTICE BROWN delivered the opinion of the court.

We are of the opinion that on the facts detailed in the statement hereunto prefixed, no liability can be enforced against the Chicago & Western Indiana Railroad Company under the ordinance of November 4, 1907, or otherwise, for the money or any part of it paid by the said City for repairing, constructing and paving the roadway on the east approach to the 18th street viaduct.

The claim of the City therefor is based on a threefold ground—first on the ordinance of November 4, 1907, which attempts expressly to impose the asserted liability; secondly, on the ordinance of September 15, 1879, which makes a condition of the privilege granted the Railroad Company of laying its tracks in the city, an undertaking on its part to erect and *maintain* viaducts over any of its tracks or any street crossed by its tracks where and as the City Council may require, and to erect and construct the *approaches* to all such viaducts with proper areas on either side of said ap-

proaches; and, thirdly, on the general police power which the City asserts over the use, impairment or alteration of its streets by railroad companies.

The first of these grounds may be said to imply the existence of the third; for if the ordinance of November 4, 1907, is valid, it must be because it is an order by the City Council for the enforcement or execution of a police power belonging to the City. This is the only ground on which have been sustained such ordinances imposing on particular persons or corporations using a street an expenditure which must otherwise be met by taxation or special assessment. Chicago & N. W. R. Co. v. City of Chicago, 140 Ill. 309-320; City of Bloomington v. Illinois Cent. R. Co., 154 Ill. 539; People v. Illinois Cent. R. Co., 235 Ill. 374.

The second of the grounds on which the City bases its claim may be referred, however, to a purely contractual relation between the Railroad and the City.

Considering first this contractual relation evidenced by the right of way ordinance of September 15, 1879, it seems plain that no obligation based on it alone can exist to pave the roadway on the approaches to the viaduct in question. A distinction seems carefully made between the viaduct and the approaches and between the obligation of the Railroad Company to erect and *maintain* the viaduct and the obligation only to erect and *construct* the approaches. The distinction certainly is not an artificial or inequitable one.

The viaduct itself is a bridge, and the necessary repairs on it might reasonably be treated differently in such a contract from the repaving of an approach which consists of a roadway that can be repaved like any other portion of the street, from which it is distinguished only by its being inclined on an embankment rendered necessary by the viaduct. We may, therefore, assume that the language used to express the differing obligations of the city as to the viaduct and the approaches was advisedly and intelligently used.

But the City maintains that the Council by the ordinance of 1879 did not attempt to contract away the inherent police power of the City to compel the repair of the approaches, and in no event could have done so. The utmost that can be argued from the language of the ordinance, it is insisted, is that by accepting the ordinance the Company did not specifically undertake to repave the approaches. It was not, however, relieved from an obligation to conform in relation thereto to the orders of the City in the exercise of its police powers.

This is a contention which may be considered in connection with the position taken by the Railroad Company, that if it be granted that the police power of the City would otherwise have allowed it to pass and enforce the ordinance of November 4, 1907, it was estopped from doing so on various scores.

The City bases its alleged rights on the position that an approach to a viaduct is in the eye of the law a necessary and integral part of the viaduct itself. Therefore, since it is conceded that the City may compel the maintenance and repair of the viaduct, it must necessarily be allowed the right to compel the repair or repaving of the approaches.

Counsel for the City in support of the general proposition that the "approaches" to a viaduct are in the view of the law parts of the viaduct itself, quote the vigorous language of Mr. Justice Chytraus of the Branch Appellate Court to that effect in City of Chicago v. Pittsburg, C., C. & St. L. R. Co., 146 Ill. App. 403. Independently of the fact that the opinion is not binding on us, and that because of the ultimate disposition of the case it is on the point involved *obiter dictum,* we do not think that even taken in its most literal sense, it implies that by mutual agreement and action a City and a Railroad can not place a definite meaning on the word "viaduct" in any given case which excludes the "approaches" thereto.

At all events the Supreme Court, whose decisions

and considered utterances do bind us, has in City of Chicago v. Pittsburgh, Ft. W. & C. R. Co., 247 Ill. 319, used much less decisive language on this point. In the course of an opinion explaining the conclusion reached that the City had no power in that case to compel the defendant to pave 18th street between Canal and Mechanic streets to the west of a viaduct on 18th street connected with the one here involved by the bridge over the river, it said that while "ordinarily an 'approach', as that term is used, is considered a part of the viaduct," yet that "what is a viaduct proper and what is an approach, where one begins and the other ends, and what is a street or highway as distinguished from the approach, are more questions of fact than of law, and are sometimes not easy to decide," and that the requirement under the police power of the municipality that a railroad shall keep and maintain its crossings "does not necessarily require the railroad to keep and maintain that which is for every practical purpose a street or highway, even though incidentally it is used as a part of the ascent or approach to reach the viaduct."

So far as we can gather from a comparison of the facts stated in the opinion in the case just cited and those which appear in the case at bar, the state of things between the west line of Wentworth avenue and the east end of the viaduct is not very dissimilar from that existing between Canal and Mechanic streets west of the viaduct on the west side of the river, and discussed in the opinion in question.

The ordinance of 1879, as we have noted, makes the distinction between the viaduct proper over the tracks and the approach, which may well be said to be "for every practical purpose a street or highway, even though incidentally used as a part of the ascent or approach to the viaduct."

Inasmuch as the existence of the viaduct required at a considerable cost the filling in permanently of the street through its full width to a higher grade by ma-

470    Appellate Courts of Illinois.

City of Chicago v. Chicago & Western Ind. R. Co., 174 Ill. App. 452.

terial of the same or different nature from that used in the rest of the roadway, while the paving and repairing of the ascending roadway after it was built would not differ materially in nature or cost from that necessary if it was level, the distinction between the obligations was, as we have also noted, a natural and apparently equitable one. It was recognized again in an agreement between the City and the Railroad Company, which was made and acted on by both parties in 1887. The City found it necessary to build a new bridge over the river between the two viaducts on 18th street. This compelled the construction of a new viaduct, and the agreement provided that the railroad company should pay one-sixth of the cost of construction of the centre pier of the bridge and, with an exception noted, the entire cost of the construction of the viaduct and eastern approach "to the end of the approach at the west curb line of Wentworth avenue." The construction which the Railroad Company thus agreed to pay for was accordingly paid for by it to an amount greater than $123,000; but again the distinction was made between the maintenance and repair of the viaduct proper and of the approach. "From the easternmost pier of the bridge to the easternmost pier of the viaduct" the Railroad Company agrees to keep the work so constructed forever maintained and in repair, but it undertakes nothing as to the maintenance and repair of the roadway over the approach, which all lies east of the easternmost pier of the viaduct.

For twenty years the City from time to time made the usual and necessary repairs on this roadway, but never demanded from the Railroad Company either advance or reimbursement therefor.

The City maintains that the agreement of 1887 thus acted on was not the contract of the City of Chicago, because it is signed only by "George B. Swift, Commissioner of Public Works," and that the record contains no evidence of his authority to execute it. Further it maintains that even if the agreement be treated

as the contract of the City, it cannot work an estoppel against the City's claim made under its police power by the ordinance of 1907.

To neither of these positions can we give our assent. The construction of a new viaduct according to prescribed plans and the participation in the cost of the new bridge over the river, aggregating an expenditure of $123,000, were not matters so plainly within the City's power to command under the right of way ordinance as to render them not the proper subject of special agreement, and it is too late, when such an agreement has been followed by that expenditure and acquiesced in and acted on in other respects by both parties for twenty years, to question the authority of the officer of the City who signed it.

And while it is true that a municipal government "as a representative of the State" cannot, by a contract, "surrender or alienate a strictly governmental function, which it is required to continue in existence for the welfare of the public" (City of Chicago v. Chicago Union Traction Co., 199 Ill. 259, p. 270) it is equally true that a municipal corporation may be equitably estopped, not indeed by mere lapse of time, but by circumstances which make it unconformable to right and justice, from exercising a power over the use and management of some particular highway which would otherwise fall within its police powers considered in their broadest aspect.

This is the doctrine adopted by our Supreme Court in cases like Chicago, R. I. & P. R. Co. v. City of Joliet, 79 Ill. 25; Chicago & N. W. R. Co. v. People, 91 Ill. 251; Martel v. City of East St. Louis, 94 Ill. 67, and City of Chicago v. Sawyer, 166 Ill. 290; and these decisions are in harmony with the general course of decisions in other jurisdictions.

We think that in the present case the distinction which the City had hitherto made by ordinance and contract between the duties of the Railroad Company as to the viaduct involved, and its duties as to the road-

way leading thereto from Wentworth avenue, and the action by both parties in apparent reliance on that distinction, estopped it from enforcing the ordinance of 1907, which preceded the institution of this suit.

We think, moreover, that the same reasoning, viewed generally, which led the Supreme Court to deny the validity of the ordinance of October 28, 1907, requiring the Illinois Central Railroad Company to reconstruct the pavement of a subway beneath its tracks (People v. Illinois Cent. R. Co., 235 Ill. 374) and the validity of the ordinance of October 21, 1907, requiring the Pittsburgh, Fort Wayne & Chicago Railway Company to repave the "approach" to the viaduct on the west side of the river at Eighteenth street (City of Chicago v. Pittsburgh, Ft. W. & C. R. Co., 247 Ill. 319) applies to the case at bar. This view of the matter renders it unnecessary for us to decide the additional question raised by the defendant, whether the ordinance would be in any case invalid as to the roadway west of Wentworth avenue, because it orders as well the repaving of the roadway one hundred and fifty feet east of Wentworth avenue, which it is conceded is no part of the approach; or the further additional question whether recovery was barred because the plaintiff did not show that other railroads named in the ordinance were, according to its terms, served with notice.

We do not understand that the facts are in dispute in this case. We reverse the judgment of the Municipal Court in acordance with our views of the law.

*Reversed.*