THE CITY OF BLOOMINGTON

v.

THE ILLINOIS CENTRAL RAILROAD COMPANY.

*Filed at Springfield January 14, 1895.*

1. RAILROADS—*what are "approaches" to crossings, within the meaning of the statute.* The width and extent of the "approaches" to a railroad crossing which the statute requires railroad companies to construct and maintain, are to be determined by what is reasonable under the circumstances of each case, and do not include the entire width of the road or street.

2. PLEADING—*sidewalk not a part of the "approaches."* A declaration which seeks to recover from a railroad company for damage paid by a city on account of a personal injury occurring upon a sidewalk on one side of a street within the company's right of way, is bad, on demurrer, if it fails to show affirmatively that the sidewalk where the injury occurred was a part of the crossing or approaches thereto.

*Bloomington* v. *Illinois Central Railroad Co.* 49 Ill. App. 129, affirmed.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of McLean county; the Hon. THOMAS F. TIPTON, Judge, presiding.

The city of Bloomington brought its action on the case against the Illinois Central Railroad Company, alleging that it had been compelled to pay certain damages recovered against it by one Tustison, who had sustained a personal injury by reason of the defective condition of a sidewalk on Jefferson street, in said city, at a point where the said street crossed the right of way of said railroad company; that it was the duty of said railroad company to keep said sidewalk in good repair, and that in the action brought by said Tustison against the city the railroad company was originally a party co-defendant with the city, but that on the trial of that cause the plaintiff therein dismissed the said railroad company therefrom, whereupon the city notified the company to appear and defend the action, and that it would be held by the city

responsible for any judgment that might be recovered therein, but the company declined to appear or defend the cause further, and although the city continued its defense the plaintiff recovered, and in the present action the city sought to recover over from the railroad company.

In the first, second and third counts of the declaration it is charged that the defect in the sidewalk was within the right of way of the railroad company, and west of its tracks. In an additional count the declaration filed by Tustison against the city and the railroad company was set out *in hœc verba*, in which he designated the point where he was injured in precisely the same way, viz., on the right of way west of the tracks, and it was then averred by the city "that said walk upon which Tustison so received his said injuries was a crossing constructed by the said Illinois Central Railroad Company for the use of foot passengers walking on Jefferson street to cross its right of way, and was the crossing and approach thereto of said Jefferson street, in said city, over said railroad, and it was then and there the duty of said defendant railroad company to construct and maintain said crossing, which was within its said right of way, so that at all times it would be safe to persons using said crossing, and the said crossing is the sidewalk in said declaration complained of."

The circuit court sustained a demurrer to the declaration, and to each count thereof, and rendered final judgment against the city for costs. An appeal to the Appellate Court for the Third District resulted in a judgment of affirmance, and this appeal is from that judgment.

JACOB P. LINDLEY, City Attorney, J. H. ROWELL, SAIN WELTY, and J. S. NEVILLE, for appellant:

The term "street," in ordinary legal signification, includes all parts of the roadway,—the gutters and side-

walks.  *Bloomington* v. *Bay*, 42 Ill. 503 ; *State* v. *Berdetta,* 73 Ind. 185; *In matter of Burmeister,* 76 N. Y. 174; *Hall* v. *Manchester,* 40 N. H. 410; *Manchester* v. *Hartford,* 30 Conn. 113; *Taber* v. *Gafmiller,* 109 Ind. 206.

All parts of the street, from side to side and end to end, are for the public use, in appropriate and proper methods.  *State* v. *Berdetta,* 73 Ind. 185.

As between it and the public, it is the duty of the city to maintain the sidewalks in a safe condition, and for neglect to use reasonable diligence in this behalf it must respond in damages to a party injured.  And this is the law for the whole street, whether at a railway crossing or at any other point.  *Joliet* v. *Verley,* 35 Ill. 58 ; *Champaign* v. *McInnis,* 26 Ill. App. 338 ; *Village of Mansfield* v. *Moore,* 124 Ill. 133; *Chicago* v. *Gallager,* 44 id. 295.

Although the city is primarily liable for the damages sustained, we have no doubt of its right to recover back the amount from the person whose duty it was to keep the premises in repair.  *Gridley* v. *Bloomington,* 68 Ill. 53.

If an individual construct a hatchway in a sidewalk, he must respond for any damages resulting from his neglect to render it safe and free from danger.  It is also the duty of the city to keep the street and sidewalk in a safe condition, and it will be liable for injury occasioned by its neglect of duty in that respect.  But should a recovery be had against the city in such case, the person whose neglect of duty caused the injury will be liable over to the city therefor.  *Severin* v. *Eddy,* 52 Ill. 189; *Bloomington* v. *Roush,* 13 Ill. App. 339;  2 Dillon on Mun. Corp. sec. 1035.

WILLIAMS & CAPEN, for appellee:

The fee of the streets being in the city, the burden is placed by law upon the city to keep them, and the sidewalks upon them, in proper repair.  *Chicago* v. *Keefe,* 114 Ill. 222; *Bloomington* v. *Bay,* 42 id. 503; *Mansfield* v. *Moore,* 124 id. 133;  *Joliet* v. *Verley,* 35 id. 58; *Flora* v. *Naney,* 136 id.

45, and 31 Ill. App. 493; *Champaign* v. *McInnis*, 26 id. 338; *Cartenille* v. *Cook*, 29 id. 495.

Where the law, whether statutory or municipal, places the burden of making repairs upon the abutting property owner, the only liability over is the reasonable cost of making such repairs, when made by the city.    The city cannot neglect its duty until some one sustains personal injuries by reason thereof, and then compel the property owner to pay the amount recovered for such injuries. *Gridley* v. *Bloomington,* 88 Ill. 554; *Rochester* v. *Campbell,* 123 N. Y. 405 ; *Raymond* v. *Sheboygan,* 76 Wis. 335 ; *Heeney* v. *Sprague,* 11 R. I. 456 ; 2 Shearman & Redfield on Negligence, sec. 343.

A judgment against one wrongdoer cannot fix the liability of a second wrongdoer, in the absence of sufficient notice to appear and defend in the name of the party against whom the original judgment is sought. *Port Jervis* v. *Bank,* 96 N. Y. 550..

Even where two joint tort feasors are *in pari delicto,* one cannot compel contribution from the other.    *Rend* v. *Railway Co.* 8 Ill. App. 517;  Cooley on Torts, 149.

BAKER, J.:  Among the assignments of error on the record of the Appellate Court are these :  "The Appellate Court erred in holding that the duty of the railroad company only extended to the construction of necessary crossings and approaches thereto, and that said duty did not extend to the whole of the railroad right of way. The Appellate Court erred in not holding that the statute makes it the duty of the railroad company to construct crossings and approaches the full width of its right of way."    And it is urged by appellant that it is the duty of railroad companies in this State to construct and maintain crossings and approaches thereto at all railroad crossings over highways and streets the full width of the right of way of their railroads, and the whole width within the right of way of the streets and

highways leading to the actual crossings over the tracks. The contention is, that the statute (2 Starr & Curtis' Ann. Stat. chap. 114, par. 71, sec. 8, p. 1937,) deals with street approaches to railroad crossings, and accordingly defines the portion of such street approaches which a railroad company must construct and keep in repair, to be all that portion of such street approaches included in the right of way. Is the claim thus made well grounded?

In *People ex rel.* v. *Chicago and Alton Railroad Co.* 67 Ill. 118, it was held that, in the absence of express statutory provision to the contrary, any person or corporation that cuts through an already existing highway, for the benefit of such person or corporation, must furnish to the public a proper crossing, even though acting under a license from the proper authorities ; but, on the other hand, if either a natural person or a corporation has a right of way across lands, and the public or municipal authorities afterwards locate and open a highway or street across such right of way, then there is no rule or principle of the common law that would compel such person or corporation to construct and maintain the crossing of the highway or street over the right of way, or the approaches thereto, at his or its own expense. *Illinois Central Railroad Co.* v. *City of Bloomington,* 76 Ill. 447.

Appellant bases its supposed right of recovery herein upon section 8 of the act of 1874, in relation to fencing and operating railroads. (2 Starr & Curtis' Stat. 1937.) That section reads as follows : "Hereafter, at all the railroad crossings of highways and streets in this State, the several railroad corporations in this State shall construct and maintain said crossings, and the approaches thereto, within their respective rights of way, so that at all times they shall be safe as to persons and property."

In *Chicago and Northwestern Railway Co.* v. *City of Chicago,* 140 Ill. 309, we sustained this section of the statute, as being a valid exercise of the police power. We there said : "The requirement embodied in section 8, that rail-

road companies shall construct and maintain the highway and street crossings, and the approaches thereto, within their respective rights of way, is nothing more than a police regulation. It is proper that the portion of the street or highway which is within the limits of the railroad right of way should be constructed by the railroad company and maintained by it, because of the dangers attending the operation of its road. It should control the making and repairing of the crossing for the protection of those passing along the street and of those riding on the cars. Section 8 recites that the railroad companies shall construct and maintain the crossings, 'so that at all times they shall be safe as to persons and property.' Safety of persons and property is the object of the requirement. The grading of the approaches and the planking between the rails and tracks make it possible for men and teams to cross easily and quickly, and thus avoid collision with passing trains, thereby insuring their own safety and the safety of the persons and property upon the trains."

In what sense is the expression "and the approaches thereto," used in this statute? The approaches to a bridge are the ways at the ends of it, which are parts of the bridge itself or are appendages to it. (*Commonwealth* v. *Inhabitants of Deerfield*, 6 Allen, 449 ; *Whitcher* v. *City of Somerville*, 138 Mass. 454; *Turnpike Co.* v. *Board of Commissioners*, 72 Ind. 226.) The words "approaches to a bridge," are in common and general use, and they are naturally and ordinarily understood to refer to the adjuncts, of whatever material constructed, at the ends of the bridge, which furnish a passage or way by which to approach the bridge itself. When applied to the subject matter of a railroad crossing, the word "approaches," as it is commonly used and understood, has a like signification and meaning. It means the embankments, or bridges, or grades, or structures of any sort, on each side of the

railroad at the crossing, which serve as the passage or way for approaching the crossing.

That this is the sense in which the legislature used the word "approaches" in this section of the statute, is further manifest from the history of such section and the circumstances under which it was passed. It was first enacted March 31, 1869. (Laws of 1869, p. 312; Gross' Stat. 1871, p. 558.) As then adopted and in force it read thus: "That hereafter, at all the railroad crossings of the public highways of this State outside of the corporate limits of the cities and villages, the several railroad companies of this State shall erect, construct and maintain the same, and the approaches thereto within their respective rights of way, so that at all times they shall be safe as to lives of persons and property." It is to be noted that as first enacted it applied only to railroad crossings of public highways outside of the corporate limits of cities and villages. The court will take judicial notice, as being a matter of common and ordinary knowledge and information, that the usual and customary width of public highways in the State, other than the streets of cities and villages, was and is from fifty feet to four rods. (2 Starr & Curtis' Stat. chap. 121, pars. 30, 168.) It would be absurd to suppose that the legislature intended by the act of 1869 to require of railroad companies, in all cases where they crossed public highways outside of the limits of cities and villages, that they should erect, construct and maintain approaches of the entire width of each and all of said highways, and reaching from the natural surface of the ground to the railroad tracks at the crossings. In most, if not all, of such rural localities the travel on such roads and highways did not, and does not, demand or require more than a small part of such width of approach, and it cannot be imputed to the legislature that it was intended to impose so heavy and so useless an expense and burden upon the railroad corporations of the State. And we all know, as matter of

common knowledge and observation, that neither prior to nor since the enactment of 1869 have the approaches to railroad crossings on the public roads and highways of this State, in localities outside of the corporate limits of cities and villages, usually been more than half the width of such roads and highways—if even that.

In 1874 the section of the statute under consideration was re-enacted in the form in which it now stands. It was so changed as to eliminate therefrom the clause that restricted its operation to railroad crossings not within the limits of cities and villages, and include within its purview streets in cities and villages as well as highways in other localities. But there was no substantial change in the language of the section that imposed upon railroad corporations the duty to construct and maintain railroad crossings, and the approaches thereto, within their respective rights of way.

There are two subjects matter, and two only, in respect to which any duty is imposed by this statute upon the railroad corporation. One of these is the railroad crossing, and the other is "the approaches thereto." There is no language which lays any burden upon it in regard to any portion of the public highway or street that is not included within either the designation "railroad crossing" or the designation "approaches thereto." There are, however, two qualifying clauses expressly incorporated into the section. One of these consists of the words "within their respective rights of way," which immediately follow and limit the expression "the approaches," so that under no circumstances can the company be called upon to extend the approaches beyond the joint territorial limits of the street and its right of way. The other qualification is, that the crossing and the approaches thereto must be so constructed and maintained as that "at all times they shall be safe as to persons and property."

What would be regarded as the approaches to the crossing would largely depend upon the demands of the traveling public, upon the action of the local authorities, and upon what would be reasonable under the circumstances and local situation in each case. It is manifest that they do not and should not, in all cases, include all that part of the right of way that is covered by the street or highway and is not immediately at the crossing. In *Chicago and Northwestern Railway Co.* v. *City of Chicago*, 140 Ill. 309, which was a condemnation proceeding, it was regarded that the whole of that portion of the street which was within the limits of the railroad right of way was to be constructed and maintained by the railroad company as approaches to the crossing. But that was in a large, populous and busy city, where a vast multitude of vehicles and people would be continuously passing and repassing. And, as we have already seen, it would be very much otherwise in respect to railroad crossings in the rural districts; and the same would, to a considerable extent, be true in regard to villages and many cities, or some localities in them. What is to be considered as the extent of the approaches to the railroad crossing must be determined by what is reasonable in the particular case, and this is fixed, for the time being, at least, by the actual approach or structure made by the railroad company, with the acquiescence of the public and the public authorities.

It does not appear from the averments of the declaration that the city of Bloomington has ever taken any steps or done anything under sections 9, 10 and 11 of the act of March 31, 1874, in the way of constructing or altering the railroad crossing or the approaches thereto on Jefferson street, nor is any ordinance of the city in relation to the matter pleaded. It is true, there is a loose statement in the third count of the declaration, to the effect that it was the duty of appellee, "under the charter and ordinances of the city," "to keep the said street and

sidewalk, where the same crosses the right of way of said railroad company, in good and safe repair and condition." But this, at least so far as any city ordinance is concerned, is merely stating the conclusion of the pleader. A municipal ordinance, like a private statute, must be pleaded just as any other matter of fact is pleaded. And we may add, we are wholly unable to find in the charter of the city, which is declared to be a public act, (Private Laws of 1861, p. 104,) any self-executing provision which imposes the supposed duty and liability.

The first, second and third counts of the declaration are substantially alike, and proceed upon the theory that it was the duty of appellee to keep the street and sidewalk, where they cross the right of way, in good and safe repair and condition, and that the sidewalk on the north side of the street and on the west side of the railroad tracks, and within the limits of the right of way, was suffered to be and remain in bad and unsafe repair and condition, whereby Tustison was injured. It does not affirmatively appear from either of these counts that the *locus in quo* was any part of either the railroad crossing of the street or of the approaches thereto. It is elementary that the pleading must be taken most strongly against the pleader. The statutory duty relied on is in respect to the crossing and its approaches only, and not in respect to any of the residue of the right of way.

In our opinion the additional count is not materially holpen by the averments that the sidewalk was a crossing constructed for the use of foot passengers walking on Jefferson street to cross the right of way, and was the crossing and approach thereto of Jefferson street over the railroad, and that the crossing is the sidewalk complained of. It is difficult to see how it can be possible that the sidewalk on the right of way on the west side of the tracks of the railroad can be at the crossing of the railroad and the street, in the sense in which the words "railroad crossings" are evidently used in the statute.

The sidewalk may have been an approach of Jefferson street, or on the approach of Jefferson street to the railroad tracks. *Non constat* it was on or a part of the approaches to the railroad crossing constructed at the junction of that street with the tracks of the railroad. As already seen, there was no obligation on the company to either build or keep in repair a sidewalk which afforded a passage to the north of and beyond such crossing, and which was, at the same time, to the north of and beyond the approaches to such crossing. The purport of this additional count is to hold appellee liable for a defect in a sidewalk upon its right of way, such defect not being at a point which was either at the railroad crossing or on the approaches to such crossing. This section 8 of the statute burdens appellee with a duty, and in case of default in its performance the immediately following sections impose upon it a fine of $100, and a liability for expenses incurred by the public authorities in construction, or in making alterations or repairs. The statute being penal and in derogation of common right, the duty imposed by it should not be extended beyond the plain meaning of the language used.

We think the declaration shows no cause of action against appellee, and that there was no error in sustaining the demurrer to each and all of the counts.

There is no occasion for the expression of an opinion in regard to other objections that are made to the declaration.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*