## Illinois Central Railroad Company v. The Commissioners of Highways of the Town of Paradise.

1. APPEALS—*Where the Order Omits to Name the Court.*—Where an appeal is granted, and the order granting it omits to designate the court to which the appeal is allowed, and by law it can go to a certain court only, the appellant may follow the law, file his record in that court, and have his appeal heard there. (See Mississippi Valley, etc., v. Bermond, 39 Ill. App. 267.)

2. RAILROADS—*Approaches to Crossings.*—Where a railroad company, when constructing its road, for purposes of its own raised an embankment in the natural bed of a watercourse, obstructed the flow of the stream and diverted its waters into a ditch, which it dug for that purpose on its right of way, it was held that the company could be compelled to build a bridge across the ditch as an approach to a railroad crossing, under Sec. 77, Ch. 14, R. S., entitled Railroads and Warehouses.

Debt, for a statutory penalty. Appeal from the Circuit Court of Coles County; the Hon. FERDINAND BOOKWALTER, Judge, presiding. Heard in this court at the May term, 1895. Affirmed. Opinion filed November 15, 1895.

### STATEMENT OF THE CASE.

The action was debt by the appellees to recover, under sections 71, 72, 73 and 74, Chap. 114, R. S., the cost of constructing a bridge alleged to constitute an approach to the railroad crossing of a highway.

The judgment was for the appellees in the sum of $461 upon an agreed statement of facts as follows:

It is agreed in this case that a jury shall be waived and the cause submitted to the court for trial upon the following agreed state of facts:

The Illinois Central Railroad has been constructed and in operation through the village of Etna, in the town of Paradise, Coles county, Illinois, for about forty years; that at the time of the construction of said railroad the ground where the village of Etna now stands, and the surrounding country for some distance, was largely open, raw prairie, no highway laid out and the public at liberty, by common consent, to travel at will where they may choose; that there were east and west tracks or paths of travel made and used by the public at various points near where the highway, subsequently laid out, now is, in which the bridge in controversy is located, one of which paths was substantially where the highway was afterward located; that at the time of the construction of said railroad there was a branch or creek running in a southeasterly direction about one mile north of the present site of Etna, and then turning south, crossed the said traveled track one-fourth of a mile east of said site of Etna, and thence southwesterly south of Etna; and that the grade of said railroad was constructed across said branch north of Etna, filling it up and shutting off the flow of the water in its accustomed channel, and to provide for the water the company constructed an artificial ditch along the west side of the grade for its track and on its right of way, south through the present site of Etna to the point where the grade crosses the branch south of Etna.

Soon after the railroad was constructed the traveled track through the present site of Etna running east and west, was, by the road authorities, laid out as a public highway, and has been, and still is, the principal street in the said village of Etna.

The village of Etna is a collection of houses, stores and shops, with a population of about one hundred, but not incorporated.

A culvert was maintained by the highway authorities across said artificial ditch along the west side of the grade of said railroad where the same crosses the public highway, running east and west through Etna.

The water kept enlarging said ditch and the culvert was

replaced by bridges, until in the fall of 1893, when the ditch had enlarged by the action of the water until it was twelve feet deep and fifty feet wide at the top, which was then crossed by a bridge in the highway fifty feet long, the planking of which came up to and against the west rail of the railroad track.

In December, 1893, the commissioners of highways met in official meeting and determined that the bridge across said ditch was dangerous for public travel, and closed the bridge up by putting railing across the ends of the bridge, and posted a notice thereon that it was dangerous.

The commissioners then put in props and braces till they considered the bridge safe temporarily, and took down the railing which had been put up, and opened the bridge to public travel, and immediately thereafter, to wit, January 1, 1894, served a written notice on the agent of the company at Etna, as required by statute, the nearest agent of said company to said bridge, notifying the company that said bridge was unsafe and dangerous to public travel, and directing the company to construct a new bridge in place of the old one, which was a wooden one and decayed, until it was no longer safe and could not be repaired.

After more than thirty days had elapsed, and no bridge having been constructed by the company, in pursuance of said notice, the commissioners advertised a public letting for the construction of such bridge according to law, and notified said company in writing of the time and place of said public letting. At the place and time of the public letting the bids were opened, and there being seven bidders, the contract was, by the commissioners, let to the lowest responsible bidder at $440. The bridge, an iron one, was constructed according to contract and accepted by the commissioners. It is twelve feet high and twenty-four long, with stone backing and wings. The filling at the ends of the bridge cost $21, thus making the total cost of the bridge paid by the commissioners $461, which was a reasonable and proper expense for the bridge.

The bridge, as it now stands, is fifteen feet from the west

rail of the railroad track, and is a necessary approach to the crossing of the track.    The right of way of the company at this point is one hundred feet wide on each side of the center of the track of the railroad.

This suit is brought in the name of the town of Paradise, by the commissioners to recover from the company the cost of such bridge.

The appellees moved to dismiss the appeal because the order of the Circuit Court was silent as to the court to which the appeal should be taken.

This motion was reserved for the hearing.

HORACE S. CLARK and JOHN F. SCOTT, attorneys for appellant.

J. F. HUGHES, attorney for appellees.

MR. JUSTICE BOGGS DELIVERED THE OPINION OF THE COURT.

The appellant prayed and obtained an order of the Circuit Court allowing an appeal.

The order is complete, save it does not designate any court to which the appeal was granted.

The appellant gave a bond conditioned for an appeal to this court and otherwise complied with the order of the Circuit Court relative to the appeal and filed the record in the case here.

The subject-matter of the controversy is such that jurisdiction of the appeal is vested by law solely in this court. Such jurisdiction is conferred by law, not by the order of the Circuit Court, and is not affected by the failure of the trial court to designate this as the court to which the case on appeal should come.

No other court than this could have lawfully been named by the trial judge in the order.    As the appeal could go to but this court the appellees could not be misled or left in doubt by the omission in the order, and clearly the right of appellant ought not to be prejudiced thereby.

Had the Circuit Court judicially determined another court

than this had jurisdiction of the appeal, and named such other court in the order as the court to which an appeal was granted, no doubt it should be taken to that court, and the correctness of the action of the trial court there determined.

Where, however, an appeal is granted and the order granting it omits to designate the court to which the appeal is allowed, and by law it can go to but a certain court, the appellant may surely follow the law, file his record in that court and there be heard.

We do not assent to the view that cases decided by our Supreme Court and cited by counsel, hold a contrary doctrine.

The question did not arise in any of such cases.

In C. P. & S. W. R. R. v. Marsailes, 104 Ill. 91, the question presented was whether the filing of an appeal bond according to the order of the court could be waived by agreement of the parties.

In Gage v. Arndt, 114 Ill. 318, an appeal was allowed to the Appellate Court of the First District, and the record was filed in the Supreme Court, and the question was whether the action of the trial court could be disregarded.

In Smith v. Chytraus, 152 Ill. 671, an appeal was granted to the Appellate Court and the terms of the order of appeal complied with.

The case was one of which the Appellate Court had no jurisdiction on appeal, and the question presented to the Supreme Court was whether the order of the Circuit Court allowing an appeal to the Appellate Court was effectual to stay further proceeding in the Circuit Court.

In neither of the above cases was the question of the effect of a failure of the trial court to designate any court to which the case should go by appeal, raised, and, as we believe, it has not been decided by the Supreme Court. We regret that we are unable to agree with the holding of the Appellate Court of the Second District in Mississippi Valley v. Bermond, 39 Ill. App. 267.

The motion to dismiss the appeal is therefore overruled.

The other question presented is whether the bridge mentioned in the agreed statement of facts is to be deemed an approach to the railroad crossing within the meaning of Sec. 71, Chap 11, R. S.

This section, it may be well to first state, is applicable. to a crossing made necessary by the extension or opening of a new highway across the track of the railroad.   C. & N. R. R. Co. v. Chicago, 140 Ill. 309.

It appeared from the statement of facts, that when constructing the railroad the company, for purposes of its own, raised an embankment in the natural bed of a watercourse, obstructed the flow of the stream, and diverted the water into a ditch which it dug for that purpose on its right of way along the westerly side of its track.

The action of the water thus forced into the ditch, in the course of time widened and deepened it until it was of the depth of twelve feet, and the width of fifty at the point where the bridge was constructed by the appellee commissioners.

The erection of a bridge or filling up the ditch was absolutely necessary to enable the public, when using the highway, to reach the railroad crossing.

The situation and the necessity arising therefrom, was chargeable to the company, being the natural result of its action in the construction of its road.

We understand an approach, within the meaning of the statute, to be an embankment, grade bridge, or structure which the construction of the road has made necessary to be erected or constructed within the right of way to enable persons passing along the highway with teams and vehicles to reach the crossing of the railroad.   See I. C. R. R. Co. v. City of Bloomington, 154 Ill. 539.

The bridge was, therefore, properly held by the trial court to be an approach to the crossing.

We see nothing in the agreed statement of facts to warrant the argument that the bridge could as well have been made of other and less expensive material.

The judgment must be, and is, affirmed.