## Orval Brown, by Brazier H. Brown, his next friend, Appellant, v. Chicago, Indianapolis & Louisville Railway Company, Appellee.

### Gen. No. 16,752.

1. RAILROADS—*obstruction in street.* Where plaintiff was riding in a wagon on a street in a village of Indiana and assisting in the pulling of a fire engine behind the wagon by means of a rope, and the engine was brought to a sudden stop by an obstruction in the street, eighteen inches high, consisting of a pile of frozen snow and cinders thrown there by employees of the defendant railway company in clearing its right of way, causing the rope to catch and crush one of plaintiff's legs, the jury is justified in finding the defendant not guilty of negligence under the statutes and decisions of both Illinois and Indiana, where at least sixteen feet of passage in the center of the street had been left clear.

2. RAILROADS—*duty to clear right of way.* A railroad company is not held to the duty of removing all snow from its right of way across a street for the whole platted width of the highway in a small country town where snow is generally only so disposed of as to leave a free and reasonable passage for persons and vehicles, and it is only required to keep its crossings and approaches so clear that they furnish a suitable passage proportionate to and adequate for the travel on the street and consistent with the condition of the adjacent roadway.

3. INSTRUCTIONS—*quoting opinions where facts different.* The arguments of a court in an opinion are to be considered and applied with reference to the facts in the case where made, and the language there used is not necessarily proper language for an instruction to a jury in another case.

4. CONTRIBUTORY NEGLIGENCE—*railroad crossing.* Plaintiff, seated in the back of a wagon and pulling a fire engine behind it by a drag rope was injured by being caught by the drag rope when the engine came to a sudden stop on striking an obstruction at a railroad crossing. *Held,* his contributory negligence was a question for the jury.

5. CONTRIBUTORY NEGLIGENCE—*harmless error.* Error, if any, in admitting a newspaper publication as to the proceedings of village trustees concerning non-members of the fire department keeping off of the fire wagon, is harmless where the evidence was subsequently excluded, in an action by one injured while drawing a fire engine behind a wagon by a drag rope.

Brown v. Chicago, Ind. & Louisville Ry. Co., 177 Ill. App. 599.

Action in case for personal injuries. Appeal from the Superior Court of Cook county; the Hon. WILLIAM H. McSURELY, Judge, presiding. Heard in this court at the October term, 1910. Affirmed. Opinion filed March 4, 1913. Rehearing denied March 20, 1913.

MORSE IVES and H. E. WYNEKOOP, for appellant.

WINSTON, PAYNE, STRAWN & SHAW, for appellee; H. R. KURRIE, JOHN D. BLACK and JOHN C. SLADE, of counsel.

MR. JUSTICE BROWN delivered the opinion of the court.

This is an appeal from a judgment of the Superior Court of Cook county. The judgment was of *nil capiat* and for costs against the plaintiff in the action. It was entered on the verdict of not guilty by a jury to which the cause was submitted. Complaint is made in the assignments of error in this court and by the arguments in their support that the Superior Court erred in the admission of certain evidence offered by the defendant, and erred also in giving certain instructions tendered by the defendant and in refusing one of those offered by the plaintiff. It is also maintained by the plaintiff that the verdict is against the manifest weight of the evidence.

The pleadings on which the cause was submitted to the jury consisted of a declaration in three counts and a plea of not guilty. The gist of the declaration was that the defendant railway company, being possessed of and using certain railroad tracks across a public highway in Monon, Indiana, through its employees negligently and carelessly created an obstruction on said highway and permitted it to remain there a long time, omitting to guard or protect it, and that thereby the plaintiff, a minor of eighteen years, who was riding in a wagon on the said highway and assisting in pulling a fire engine behind said wagon by means of a rope, was injured in this way: The fire engine struck said obstruction and by it was brought to a sudden stop.

By this the rope was violently jerked and it caught one of the legs of the plaintiff, pulled it against the end gate of the wagon and crushed it so that it was necessary to amputate it above the ankle.

Material facts shown in the evidence concerning which there was no dispute, were these:

Monon, Indiana, is a village of about 800 people. Defendant's railroad passed through the town from northwest to southeast and crossed Arch street, a north and south street, at grade at about the junction of Arch and Third streets. Third street was one block south of and parallel to Fourth street, which ran east and west. The defendant railway had a right of way through the town extending at least thirty-seven feet northeast of its four tracks. From the right of way line north Arch street was surfaced with gravel and crushed stone. From the northern limits of the right of way to the tracks the road was surfaced with cinders. South of the right of way it was an ordinary dirt road running two blocks and ending at a river. There were dwelling houses but no places of business on Arch street south of Fourth and not more than forty crossings of the tracks daily, taking both directions together, were made by teams. The street is platted as sixty feet in width. From curb to curb on the north side of the tracks it was 37 feet in width. In the center of this at the tracks was a planked roadway, crossing the tracks, sixteen feet wide. Ten feet or so west from this was planking crossing the tracks and connecting with a sidewalk to the north.

March 4, 1908, the plaintiff, a lad of eighteen years, while at work in the loft of a barn on the south side of Fourth street, heard the fire gong ring. He ran across the street to the town hall, and finding others there, helped to take out a two-wheel chemical fire engine weighing about fifteen hundred pounds and attach it to a wagon that happened to be near, drawn by two horses and belonging to a farmer named Ball. The bed of the wagon was built up by top boards or sidings around

602     APPELLATE COURTS OF ILLINOIS.

Brown v. Chicago, Ind. & Louisville Ry. Co., 177 Ill. App. 599.

it, and at the rear between the top end gate or boarding and the lower one, was an aperture of four inches. Through this opening a rope attached to the fire engine was taken into the wagon and four young men, including the plaintiff, boarded the wagon and seized the rope. It was a loop of rope that thus passed through the opening into the wagon, the two sides of the loop running respectively from ends of a spool or windlass underneath the tongue of the fire engine and passing respectively through two eyes at the end of a tongue six feet long. The rope was continuous except at this spool to which its ends were fastened. As much of the rope as was needed to draw the engine could be pulled out, and then by a ratchet the windlass could be made fast. A loop of twelve or fifteen feet from the end of the tongue, eighteen to twenty-one feet in all, was pulled out from the spool at this time. A portion of the end of the loop lay in the wagon toward the front end, while the portion nearer to the rear boxing of the wagon was held by the four men. The plaintiff Brown was nearest to the front of the wagon and therefore to the end of the loop which lay in the wagon, as he stood facing the rear of the wagon and the engine. He says he closed his hands around both sides of the loop but that he does not know whether his feet or either of them was within the loop as it lay in the wagon. The testimony of another witness shows that the young men standing in front of him nearer the rear end of the wagon each held but one side of the loop.

The wagon with the fire engine drawn after it, the end of the tongue of the engine being not much more than a foot or a foot and a half behind the tail-board of the wagon, was driven west on Fourth street to Arch street on a trot and turned south on Arch street. As it approached the track the driver pulled up his horses to a fast walk, and as he testifies, pulled to the right a little to keep from running into a wagon in front of him. The engine stuck at something, the rope was jerked out of the hands of all the persons holding it,

and the end of the loop lying back of the plaintiff in the wagon, as it ran through the wagon box caught the plaintiff's left leg just above the shoe top, dragged him to the end of the wagon and practically tore his foot off.

The questions concerning which there is any variance in the evidence are, first, what caused the engine to stick and thus jerk the rope from the hands of those who held it; second, if, as the great weight of the evidence shows, it was a mass of matter lying within the limits of the highway and the result of the defendant's action there, of what was this mass of matter composed; and, third, where did it lie with reference to the limits of the highway and of the defendant's right of way.

As to the first question the weight of the evidence is clear. There seems to have been seven eye witnesses of the accident examined—four men who were in the wagon and three men who were on the sidewalk. The driver of the wagon, Ball, who of course was facing south, testified that he did not recollect whether there was a pile of snow or dirt at the point of the accident or not; and Schultz, who was on the sidewalk two hundred feet to the north, swore that although he did remember that there was such a pile there, and saw the fire engine hit something and stop, he didn't think it struck or touched the snow pile, which was "quite a piece away." William F. Kesler says he saw the accident, but was not asked whether the engine struck a pile of snow which he said existed at the tracks or not.

The four other men who saw the accident, J. J. Kestler, Graves, Cherry and the plaintiff himself, testified that the west wheel of the engine struck the pile or obstruction, composed at least partially of snow, which was northeast of the tracks and west of the center of Arch street, and that it was this which brought it to a sudden stop and dragged the rope from the still moving wagon.

604    APPELLATE COURTS OF ILLINOIS.

Brown v. Chicago, Ind. & Louisville Ry. Co., 177 Ill. App. 599.

In determining whether this judgment can be sustained we must assume that the jury found this to be the fact, for if it inhered in their verdict that they found to the contrary, we should be obliged to hold it contrary to the clear weight of the evidence. Nor is this made doubtful by the testimony of two employees of the defendant company apparently asserting that there was no pile of snow where this accident occurred. Even considering their testimony taken as an entirety definitely to assert this, it is inconsistent not only with the evidence before mentioned, but also with the testimony of other witnesses for the defendant. We shall assume, therefore, that the decision by the jury was on the hypothesis that the accident was caused by the striking of the wheel of the fire engine on a pile of matter west of the center of Arch street, which pile was, as the witnesses who describe it variantly say, from 3 to 8 feet long from east to west, about 3 feet wide from north to south and not far from 18 inches high.

As to the second question involving the composition of the pile, while the witnesses speak of it variously in different places as track rubbish, dirt, etc., it is, we think, quite clear from an analysis of the testimony regarding it, taken as a whole, that the pile was composed of frozen snow and ice with the mingling of some cinders from the mass with which the street just north of the tracks had been surfaced, and which had been brought onto the tracks by the street traffic and probably with other slight admixture of dirt, had been thrown out with the snow when the tracks and crossings were cleared after a heavy snowfall a fortnight or so before. A pile mostly of snow and ice had thus been formed, doubtless infiltrated with dirt of different sorts, as any snow pile formed in such a way is apt to be in a village or city street. This at least we think from the evidence the jury were justified in believing, and if it be necessary in order to sustain their verdict to assume that they considered this pile to be essen-

tially a pile of ice and snow, with only the usual concomitants of such a pile, we must assume they did so consider it.

About the third question before noted, that as to the exact position of this pile against which the engine struck, the evidence varies more.

The witnesses practically agree that it was from five to ten feet north of the tracks, but they differ as to how near the center of the street it was. Some of them testify that its eastern end was east of a line drawn north from the western end of the sixteen-foot wide planking in the middle of the street; others—and we think the weight of the evidence is that way—that its eastern end terminated at or just west of this sixteen-foot line, and that a similar pile of snow on the eastern side of the street was to the east of a line drawn north from the eastern end of the planking, thus leaving sixteen feet in the clear at least between the two piles of snow for travel. The testimony is certainly such that we must regard the jury at liberty to have so found, and must consider that they did so find if that finding is necessary to sustain their verdict on the evidence.

The plaintiff contends, however, that this is immaterial; that it must be conceded that the pile of snow which the engine struck was within the limits of the highway; that it was placed there by the defendant and left unguarded, and that this is in itself proof of negligence, irrespective of whether the width of space left for travel was sixteen or a less number of feet; and that consequently the verdict is manifestly against the weight of the evidence, if based on a finding that the defendant company's negligence was not the proximate cause of the injury. If it was based on the belief of the jury that the plaintiff was guilty of contributory negligence—a question which was properly left to them—the plaintiff contends that the jury were misled by the erroneous admission of evidence and by erroneous instructions.

606    APPELLATE COURTS OF ILLINOIS.

Brown v. Chicago, Ind. & Louisville Ry. Co., 177 Ill. App. 599.

Against these contentions the defendant maintains that the facts show no negligence on its part. It introduced evidence that snow which fell on the sidewalks of Arch street and other streets of the town of Monon was customarily thrown into the street, and that no snow was ever removed or carted away from the streets and contends that the defendant was bound only under the law to keep its crossing and the approaches thereto reasonably safe for public use. As we think that the evidence strongly tended to prove and justified the jury in finding that the crossing and approaches in this case furnished a reasonably safe passage for public use, notwithstanding the snow piles on either side of the way, it follows that if we hold with the defendant on this proposition of law, we must hold the verdict of the jury can be justified on the ground that the defendant was guiltless of any negligence.

That the proposition in question would be true as a general proposition of the common law, in the absence of statute, and that it is the law of Illinois under the judicial decisions which construe the statute of this state in regard to railroad crossings, we have no doubt. City of Bloomington v. Illinois Cent. R. Co., 154 Ill. 539; Cleveland, C., C. & St. L. R. Co. v. Johns, 106 Ill. App. 427.

It is consonant with right reason too that a railroad company should not be held to the duty of removing all snow from its right of way across a street, for the whole platted width of the highway in a small country town where all persons else only so dispose of the snow as to leave free and reasonable passage for persons and vehicles, and where entire removal of snow from the streets is unheard of. When, in such case, the railroad company, like the rest of the community, has kept its crossing and approaches so clear that they furnish a suitable passage proportioned to and adequate for the travel on the street and consistent with the condition of the adjacent roadway, it would seem that it cannot, in the absence of peculiar or especial provisions of law affecting it, be held guilty of negligence. It was

in accordance with this view of the law that instructions 13, 15 and 16, complained of by plaintiff, were given. Instruction 13 is in part:

"If you find from the evidence in this case that the defendant used reasonable care, that is the degree of care which an ordinarily prudent man would have used under like circumstances and conditions, in making the pile in question, if you find from the evidence that the pile in question caused the injury, then you are instructed that the plaintiff cannot recover in this case."

Instruction 15 is:

"You are instructed that the law does not require a railroad company to keep and maintain approaches to its crossings in an absolutely safe condition for travel, outside of the limits of usual and ordinary travel. If you believe from the evidence in this case that the defendant exercised reasonable care with reference to the manner in which it kept and maintained the crossing in question, and approaches to the crossing, then you are instructed that the plaintiff cannot recover."

Instruction 16 is:

"In determining whether the conduct of the defendant in this case at and before the time of the accident was negligent, you are instructed that it is your duty to take into consideration all the facts and circumstances shown by the evidence bearing upon the conduct of the defendant. If you find that the defendant acted with reference to the clearing of its crossing and the pile of snow and other material, in the same manner that a reasonably prudent man engaged in conducting the same business under like circumstances and conditions would have acted, then the defendant was not guilty of negligence and the plaintiff cannot recover against the defendant."

It is probably true that in certain particulars these instructions might have been more precisely drawn; but they appear to us not to be reversibly erroneous or misleading on the assumption that the position in regard to the defendant's liability, before indicated as the general law and the law of Illinois, was the correct one for the court in this case to take.

608     Appellate Courts of Illinois.

Brown v. Chicago, Ind. & Louisville Ry. Co., 177 Ill. App. 599.

The plaintiff, however, emphatically insists that this position, whether or not it represents the law of Illinois, is not tenable in this case, which is governed by the law of Indiana. The law of Indiana, the plaintiff says, is clearly at variance with the theory which runs through these three instructions, and is, on the contrary, expressed by the following instruction, numbered 18, tendered by him and refused by the court:

"It is unlawful to place and keep or leave continuously in a public highway anything which either impedes or endangers public travel. This rule applies to the whole width of the highway and not merely to a worn portion of it commonly used for passage. And if you find from the evidence in this case that the defendant deposited upon a part of the driveway of a public street of Monon a pile of snow and dirt and knowingly permitted it to remain there, and if you find that that pile endangered travelers upon the street there, then you may find that the defendant in placing and permitting that pile to remain there was negligent."

Counsel for plaintiff referred in argument to a statute of Indiana, which it claimed imposes an obligation on a railroad crossing a highway different from and more stringent than that which the law of Illinois enforces in similar cases. No statute of Indiana was pleaded or proved in this cause by the plaintiff, and those statutes which are alluded to in the opinion of the Supreme Court of Indiana cited in plaintiff's brief as establishing the existence of such a legislative act (Vandalia R. Co. v. State, 166 Ind. 219) hardly bear out the statement. The general railroad act of the state, the court says, grants railroad companies power to construct their roads upon or across any highway, so as not to interfere with the free use of the same, which the route of its road shall intersect, in such manner as to afford security for life and property; but the corporation shall restore the highway thus intersected to its former state or in a sufficient manner not to unnecessarily impair its usefulness.

We see no such different or additional duty imposed by this statute.

The only other statute affecting the matter which the opinion refers to, declares it to "be the duty of each railroad company whose road or tracks cross or shall hereafter cross any street, avenue or alley in any incorporated town or city in the State of Indiana, which said street, avenue or alley has been or shall hereafter be by addition, plat or otherwise dedicated to the public use, to properly grade and plank or gravel its said road and tracks at its intersection with and crossing of said street, avenue or alley in accordance with the grade of said street or avenue, in such manner as to afford security for life and property at said intersection and crossing."

This statute no more than the other changes the law on the matter involved in this controversy from that which the Supreme Court of Illinois has laid down in the cases we have cited.

The plaintiff, however, introduced in evidence, to show the law of Indiana, two opinions of Indiana courts—one of the court of last resort—Ohio & M. R. Co. v. Trowbridge, 126 Ind. 391; and one of an intermediate court—Indiana Natural & Illuminating Gas Co. v. McMath, 26 Ind. App. 154.

In the Supreme Court case a judgment recovered against a railroad company was affirmed in favor of an injured woman whose horse was frightened by a handcar removed by employees of the road from the track and placed by them about ten feet from the center of a highway along which they saw her approaching. It would seem to us that nothing additional or different from the law as it is declared and understood in Illinois was necessary to justify the verdict of the jury and the judgment in that case  Nor do we find in the language of the learned judge who delivered the opinion of the court anything which would so imply. He says that the right of using a highway for the storage of cars, or even as a place of temporary deposit of cars, is not

possessed by any railroad company, and that while possibly an emergency might arise excusing or justifying the temporary use of a highway for such a purpose, such temporary use even is *prima facie* unlawful, and that the railroad company had offered no satisfactory explanation or reasonable excuse for it.

Although, as he says, it is not every wrongful obstruction of a public way that invests a plaintiff with a cause of action, even though he may suffer a special grief from the wrong, yet in the case at bar it might be inferred with entire propriety that the position occupied by the car was so unusual as to cause the appellee's horse to take fright, and that there was no reason for obstructing the public road. He adds:

"We deem it proper to add that we seriously doubt whether a railroad company can escape liability where, without any necessity requiring it, a highway is obstructed by the act of its employees in placing a car or cars within the highway limits. We are indeed strongly inclined to the opinion that while a railroad company may not be liable for injuries caused by horses taking fright at locomotives and cars used and kept upon its tracks, yet it may be liable when it places them in a public road; but this question we need not here decide. A railroad company has certainly no right to increase the danger of travellers by placing cars on a public highway."

We see nothing in all this militating against the propositions of law to which the courts of Illinois, as we think, are committed, or which bears out the contention of the plaintiff that instructions 13, 15 and 16 should have been refused and instruction 18 given.

It is, however, on the opinion of the Appellate Court of Indiana introduced in evidence that the plaintiff insists most strongly in argument as showing that the law of Indiana establishes the doctrine for which he is contending. In that case (Indiana Natural & Illuminating Gas Co. v. McMath, 26 Ind. App. 154) a judgment for an injured plaintiff was affirmed, rendered on the following state of facts:

The Gas Company had transmitted its gas to certain customers in Tipton County, Indiana, through pipes one-half inch in diameter which it had laid on the top of the ground upon a public highway "in such a manner as to obstruct the highway," the complaint alleged, and had allowed weeds and grass to grow over and obscure from sight.

One day the appellee was traveling along this highway with a traction engine and attached clover huller, and it became necessary for him to turn from the highway into a clover field. Not seeing the pipe because, as the complaint says, "it was covered up and hidden by weeds and grass which were negligently permitted to grow over it," he ran his engine over it. The pipe was broken, the gas escaped, the fire in the fire box of the engine ignited it and caused an explosion, the appellee was injured and secured a verdict and judgment for $500.

The court said in the first place, that the complaint stated a cause of action with sufficient definiteness, and then cited Lebanon Light, Heat & Power Co. v. Leap, 139 Ind. 443, to the effect that to lay natural gas pipe uncovered on the surface of a highway was unlawful. He quotes from said Leap case the words: "The public roads free from any obstruction to travel are solely and from fence to fence for the use of the traveling public." These words were used by the Supreme Court of Indiana in the Leap case concerning the following state of facts: The defendant, which was running a natural gas plant, had laid on intersecting highways, apparently along their sides or edges, almost two miles of poorly jointed gas pipes in the form of a T, and after taking up some of the stem of the T, imperfectly plugged the orifice and conducted gas through the pipes at a pressure of more than three hundred pounds to the square inch. The gas was constantly escaping at the plug and was frequently on fire. Leap, a youth of eighteen, was injured by an explosion which took

place while he was standing on the highway and looking at the fire. A judgment which he obtained was reversed on account of error in the instructions on contributory negligence, but the court said in the course of its opinion:

"This complaint charges in substance that the appellants were guilty of negligence in laying a natural gas pipe as described upon the public highway and in transporting through said pipe as so constructed natural gas at the dangerous pressure of three hundred pounds to the square inch. We think the charge is fully sustained by the evidence. That the pipe was carelessly put together is evident from the numerous leaks in addition to the one at the crossing which are testified to. It was additional negligence to lay such a poorly jointed pipe containing such a dangerous explosive loose upon the ground, where the public, including children and other inexperienced persons, were passing day after day. Besides all this, it was a violation of the law to lay pipe upon the public highway. Whatever may be said as to the right to lay gas pipe or other pipe in covered trenches along the highway after due permission obtained from proper authority, and so laid as not in any manner to obstruct the highway or endanger public travel, there can be no question that it is unlawful to occupy the surface of the highway as done in this case. The public roads free from any obstructions to travel are solely and from fence to fence for the use of the traveling public."

The court then cites the Trowbridge case, 126 Ind. 391, which we have before noted.

To return to the McMath case, *supra,* in the Appellate Court—after citing and quoting as stated, the Leap case, *supra,* in the Supreme Court, the learned judge of the Appellate Court proceeds:

*"It is a nuisance and unlawful to place and keep or leave continuously in a public highway anything which either impedes or endangers public travel.*

*This rule applies to the whole width of the highway and not merely to a worn portion of it commonly used for passage.* Privileges which if usurped by a great

Brown v. Chicago, Ind. & Louisville Ry. Co., 177 Ill. App. 599.

number of persons or corporations would change the road from a public easement to a mere special benefit or convenience to such usurpers are not lawful for any of them. The uses must be consistent with the continued use of the road and every part thereof as a passageway by all persons exercising ordinary care.''

We have dwelt at length on the facts in the Indiana cases above recited and quoted freely from the opinions in them, because it is upon them that the plaintiff relies to show that the law of Indiana at least made it unlawful for the railroad company to leave the pile of snow and ice involved in this case within the limits of the highway, irrespective of the particular facts and circumstances and of the way a reasonably prudent man would have acted in clearing snow away along the same street. The words which we have italicized in the opinion of the Appellate Court of Indiana in the McMath case were transferred by the plaintiff to the proffered instruction 18, of the rejection of which he complains.

But it has often been said by the courts of Illinois that the comments and remarks of the court in actions of negligence, and indeed the argument of the judge delivering an opinion in any case, are to be considered and applied with reference to the facts of the case in which they are made, and the language of the Supreme Court in one case is not necessarily proper language for an instruction to the jury in another. Village of Fairbury v. Rogers, 98 Ill. 554; Wolcott v. Reeme, 44 Ill. App. 196; Chicago, P. & St. L. R. Co. v. Condon, 108 Ill. App. 639; Chicago & N. W. R. Co. v. Trayes, 33 Ill. App. 307.

The comparison of the Indiana cases with the one at bar shows a marked illustration of the truth of this proposition. These cases are so different in their facts from the one at bar that what was said in them has properly little or no relation to the questions here involved.

The Indiana courts were speaking in one case of the placing within a few feet of the center of the highway in "an unusual position" an object likely to frighten the horse an approaching traveler was riding, and it was proper and natural to say that the fact that this object was not planted in the center of the street so as actually to obstruct passage was no defense.

In the other two cases the Supreme and Appellate Courts were dealing with unwarranted and unjustifiable trespasses on the rights of the public, by private corporations without authority placing for their own convenience and benefit pipes carrying a highly dangerous and explosive gas along the sides or edges of the highway but within its boundaries. It was here again most natural to say, in some form of words, that it was no defense, as was probably urged, that the pipes were not placed in the center or worn portion of the road.

But to the action of either a railroad company or a private citizen in removing the natural obstruction in a traveled roadway, caused by a fall of snow, to a position still within the boundaries of the highway, but outside of sufficiently wide passages for vehicles and pedestrians, the words of the Indiana Courts are entirely inapplicable and at the very best but mere dicta. They might, we think, well be properly and naturally used by the Supreme Court of this state in any case similar to those in which they were used by the courts in Indiana, and not be considered at all inconsistent with the rule laid down in City of Bloomington v. Illinois Cent. R. Co., *supra*. To urge them, therefore, as proving a different state of the law in Indiana, applicable to the facts in this case, from that prevailing in Illinois, is to give to the phraseology of a court's opinion an effect as evidence of the law of another state, for which we know no authority.

We think on the question of the negligence of the defendant there was neither reversible error in the rulings on instructions nor on evidence nor in the

ruling on the motion for a new trial on the ground that the verdict was against the weight of the evidence thereon. We think the jury justified in holding that no such negligence was shown. As, however, the hypothesis is possible, although we do not deem it probable, that the jury might have considered the defendant guilty of negligence, and yet held the plaintiff unentitled, because of his contributory negligence, to recover, we note that we have considered also the objection made to the admission of the evidence of the proceedings of the Trustees of Monon in relation to nonmembers of the fire department keeping off a fire wagon. We do not think, under the circumstances and the subsequent exclusion of the paper in which the notice appeared, that its introduction could have had any injurious effect on the jury, even if it was immaterial and erroneous, which we do not decide.

We do not hold, as defendant contends, that the contributory negligence of the plaintiff was so clearly shown that it became a matter of law for the court to declare by a peremptory instruction. The question was properly left to the jury, but we do not think that the verdict should be disturbed even if it inhered in it —as it does not—that they found adversely to the plaintiff on this issue alone.

We do not think injustice was done by the verdict and judgment in this case, nor that there was reversible error in the proceedings and the judgment is affirmed.

*Affirmed.*